UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

WINDSOR MORRISON,

                       Plaintiff,

       - against -

THE CITY OF NEW YORK, PETER
MORALES and EDMUND MORRIS,
employees of the New York City Police
Department,

                 Defendants.

----------------------------------------------------------x

PLAINTIFF'S STATEMENT
PURSUANT TO LOCAL RULE 56.1
IN RESPONSE AND OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
14 CV 4508 (MKB)(VMS)

Genuine issues of material fact prevent entry of summary judgment in Defendants' favor

in this matter.  No genuine issues of material fact prevent entry of summary judgment against

Defendants' on Plaintiff's claims of false imprisonment on a non-existent Bench Warrant.  The

Plaintiff sets out the following as his Rule 56.1 Statement in Response and Opposition to the

Summary Judgment Motion brought by Defendants, City of New York, Morales, and Morris.

Pursuant to Fed.R.Civ.P. 56(e), exhibits relied upon by Plaintiff are annexed hereto.


Defendants Statement ¶1

In the early morning hours of May 25, 2013, plaintiff Windsor Morrison was driving a 2002
Lincoln Towncar four door vehicle of which he was not the registered owner, with a female
passenger sitting in the back seat. (Ex. A to Declaration of Mark D. Zuckerman, dated December
21, 20~ 7 (hereinafter "Zuckerman Decl.") Morales dep., p. 11, ll. 9-17; p. 13, ll. 4-20; p. 15, l.
24-p. 16, l. 9; p. 25, l. 23-p. 26, l. 3; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 21,
ll. 16-22; Ex. C to Zuckerman Decl., Morrison dep., p. 176, ll. 8-9; p. 177, ll. 5-10

Plaintiff's Response to Defendants' Statement ¶1

Admitted but plaintiff objects to Statement 1 as an incomplete statement of facts relating

to the subject matter of the Statement.

On May 25, 2013 at and around 2:55 a.m., Windsor Morrison was a licensed driver

lawfully operating a 2002 Lincoln Towncar registered to his wife. *Declaration of Windsor*

*Morrison dated March 26, 2018 ("Morrison Decl.) at ¶3-4.* Sitting in the rear passenger seat

was Shontell Morris, *Id. at ¶4*, the girlfriend of a friend of Mr. Morrison. *Affidavit of Shontell*

*Morris sworn to March 26, 2018 ("Shontell Morris Aff.") at ¶4.* Mr. Morrison was driving Ms.

Morris from the Broadway Junction subways stations to that friend. *Id. at ¶4-5; Morrison Decl.*

*at ¶3.*


Defendants' Statement ¶2

At approximately 2:55 a.m. on May 25, 2013, plaintiff was observed by P.O.s Morales and
Morris while plaintiff was driving eastbound on Linden Blvd., in Brooklyn, as these officers
were on patrol in an NYPD vehicle. (Ex. A to Zuckerman Decl., Morales dep., p. 17, l. 12-p. 18,
l. 9)

Plaintiff's Response to Defendants' Statement ¶2

Denied to the extent defendants suggest or imply that plaintiff's vehicle was in motion

when the Officers first saw it. Plaintiff admits that when defendant Morales and Morris first saw

plaintiff's automobile , it was facing east on Linden Boulevard and that the Officers were on

patrol.

When the Officers' vehicle first came into Mr. Morrison's view, his vehicle was stopped

at a red light facing east on Linden Boulevard at the intersection of Linden and Crescent Street.

*Morrison Decl. at ¶6; see generally Exh. 2: Excerpted Transcript of Plaintiff's January 16, 2014*

*Testimony Pursuant to General Municipal Law §50-h ("Morrison 50-h") 21:5-25:21.*

The Officers were travelling north on Crescent as they approached the intersection perpendicular to Mr. Morrison on the right. *Morrison Decl. at ¶6; Exh. 2: 50-h 26:5-27:8.* Although they had the green light, the Officers' vehicle stopped. *Morrison Decl. at ¶6; Exh. 2: 50-h 28:15-29:2.*


Defendants' Statement ¶3

P.O. Morris was driving the NYPD vehicle, and P.O. Morales was the "recorder." (Ex. D to Zuckerman Decl., Morris dep., p. 13, ll. 20-22)

Plaintiff's Response to Defendants' Statement ¶3

Admitted.  Peter Morales and Edmund Morris were working as partners on May 25, 2013. *Exh. 5: Excerpted Transcript of August 1, 2016 Testimony of Edmund Morris ("Morris") 10:21-11:10; 12:22-13:5.* Morris was driving and Morales was the "recorder." *Id. 13:13-22.* The recorder, among other things, monitors, handles, and documents radio calls and records summonses that were issued. *Exh. 6: Transcript of Peter Morales' August 1, 2016 Deposition ("Morales") 19:23-20:14.*


Defendants' Statement ¶4

The defendant officers first noticed plaintiff's vehicle because it appeared to be traveling at an excessive rate of speed. (Ex. A to Zuckerman Decl., Morales dep., p. 22, ll. 3-6)

Plaintiff's Response to Defendants' Statement ¶4

Denied.

From the time plaintiff operated his vehicle from the Broadway Junction subway stations to the time the police signaled for him to pull over, he did not operate the vehicle at an excessive

rate of speed and did not appear to operate the vehicle at an excessive rate of speed.  *Morrison Decl. at ¶8; Shontell Morris Aff. at ¶7-8.*

Officer Morales and Morris first encountered the automobile Mr. Morrison was operating when plaintiff was stopped at a red light facing east on Linden Boulevard at the intersection of Linden and Crescent Street.  *Morrison Decl. at ¶6; see generally Exh. 2: Morrison 50-h 21:5-25:21.*  The Officers' vehicle first came into Mr. Morrison's view as they travelled north on Crescent and approached the intersection of Linden Boulevard.  Although they had the green light, the Officers' vehicle stopped. *See Plaintiff's Response to Statement 2.*


Defendants' Statement ¶5

P.O.s Morales and Morris were driving behind and in the same direction as plaintiff for approximately three minutes and observed plaintiff driving approximately 50 MPH in a 30 MPH limit zone, and "paced" him. (Ex. A to Zuckerman Decl., Morales dep., p. 21, ll. 7-24; p. 24, ll. 18-23; Decl. of P.O. Morales, dated December 14, 2017 (hereinafter "Morales Decl.")

Plaintiff's Response to Defendants' Statement ¶5

Denied.

Mr. Morrison did not operate the vehicle at an excessive rate of speed and did not appear to operate the vehicle at an excessive rate of speed.

When the light facing Mr. Morrison turned green, both cars started to drive at same time. Mr. Morrison stopped his vehicle and the police car stopped.  Mr. Morrison started to drive and the police car started driving again.  Plaintiff again stopped and then paused.  Plaintiff started driving again and, this time, the Officer's vehicle did not move and plaintiff proceeded through

the intersection. *Morrison Decl. at ¶7; see also Exh. 3: Morrison May 16, 2016 at 31:13-21*

(describing incident).

The police car turned from Crescent onto Linden and followed behind plaintiff's vehicle.

Plaintiff did not exceed the speed limit. *Morrison Decl. at ¶8.*

Defendants' Statement ¶6

On May 25, 2013, at approximately 2:58 a.m., plaintiff Windsor Morrison's vehicle was stopped by P.O. Peter Morales and P.O. Edmund Morris, due to his driving at an excessive rate of speed. (Ex. A to Zuckerman Decl., Morales dep., p. 11 , ll. 9-17; p. 22, ll. 3-6; Ex B to Zuckerman Decl., Morrison 50-h transcript, p. 25, ll. 13-16; p. 26, IL 5-11)

Plaintiff's Response to Defendants' Statement ¶6

Denied, although plaintiff admits that Officers Morales and Morris stopped plaintiff's

vehicle on May 25, 2013 at around that time.

Mr. Morrison continued east on Linden Boulevard and the Officers signaled for plaintiff

to pull over. Mr. Morrison turned right onto Eldert Lane and stopped near a bus stop south of

Linden a couple of blocks from Ms. Morris' destination. It is about a quarter of a mile from

Crescent to Eldert on Linden Boulevard. *Morrison Decl. at ¶10; see also Exh. 12: Maps.*

Defendants' Statement ¶7

Plaintiff's vehicle was stopped on May 25, 2013, at or about the intersection of Linden Blvd. and Eldert Lane, in Brooklyn, New York, by P.O.s Morales and Morris. (Ex. A to Zuckerman Decl., Morales dep., p. 11, ll. 9-17; p. 19, ll. 3-15; p. 24, l. 24-p. 25, l. 15; Ex. D to Zuckerman Decl., Morris dep., p. 17, ll. 17-24)

Plaintiff's Response to Defendants' Statement ¶7

Plaintiff admits Statement 7 and notes that that Mr. Morrison's vehicle was stopped facing south on Eldert Lane in Brooklyn.

Defendants' Statement ¶8

When plaintiff's vehicle was stopped by P.O.s Morales and Morris, there was a female passenger sitting in the back passenger seat of plaintiff's vehicle. (Ex. A to Zuckerman Decl., Morales dep., p. 13, ll. 4-20; p. 25, l. 23-p. 26, l. 3; Ex. C to Zuckerman Decl., Morrison dep. p. 177, ll. 5-10)

Plaintiff's Response to Defendants' Statement ¶8

Admitted; Shontell Morris was seated in the rear of the vehicle. *Morrison Decl. at ¶4;*

*Shontell Morris Aff. at ¶5. (*She "had been in his car before, and I sat in the rear seat because the front passenger door did not work and could not open.")

Defendants' Statement ¶9

After approaching plaintiff's vehicle, P.O. Morales spoke with the female passenger who was sitting in the backseat of plaintiff's vehicle upon plaintiff's vehicle being stopped. (Ex. A to Zuckerman Decl., Morales dep., p. 26, ll. 14-17; Ex. C to Zuckerman Decl., Morrison dep., p. 178, ll. 9-15)

Plaintiff's Response to Defendants' Statement ¶9

Denied.

The two officers parked behind plaintiff's vehicle and walked over to the car.  Officer Morris, was on the passenger side and Officer Morales walked towards the driver's side.

*Morrison Decl. at ¶11.*

Mr. Morrison opened the car door because the driver's side window did not open and Officer Morales told plaintiff not to open the door.  *Id. at ¶12.*

Plaintiff explained that the window did not open and that he did not have his wallet with him and did not have his driver's license with him.  *Id. at ¶12.*

Officer Morales asked for verification of plaintiff's identity, and plaintiff provided him a letter from plaintiff's medical insurance company addressed to Mr. Morrison at his home.  Mr. Morrison also provided his date of birth. *Id. at ¶12.*

Officer Morales left and returned from the police car a few minutes later and plaintiff stated that he had a valid driver's license and confirmed the date of birth and Morales returned to the police vehicle.  *Id. at ¶13.*

It was then that Shontell Morris asked the second officer, Officer Morris, if she could leave.  He said that she may, and she left and walked to her destination.  *Id. at ¶14; Shontell Morris Aff. at ¶9.*

Neither Officer Morales nor Officer Morris questioned or said anything to Ms. Morris other than Officer Morris saying that she could leave. *Morrison Decl. at ¶15; Shontell Morris Aff. at ¶9.*

Officer Morales then returned from the police vehicle.  *Morrison Decl. at ¶16.*


Defendants' Statement ¶10

The female passenger sitting in the back seat of plaintiff's vehicle told P.O. Morales at the time of the stop that she did not know plaintiff and that he was operating a taxi. (Ex. A to Zuckerman Decl., Morales dep., p. 26, l. 23-p. 27, l. 8)

<u>Plaintiff's Response to Defendants' Statement ¶10</u>

  Denied.  See Response to Statement 9.


<u>Defendants' Statement ¶11</u>

P.O. Morales also spoke with plaintiff upon stopping plaintiff's vehicle. (Ex. A to Zuckerman Decl., Morales dep., p. 26, 11. 14-17)

<u>Plaintiff's Response to Defendants' Statement ¶11</u>

  Plaintiff admits that Officer Morales spoke with him but denies that Morales spoke with

the passenger, Shontell Morris.  *See Response to Statement 9.*


<u>Defendants' Statement ¶12</u>

Plaintiff was asked to produce his driver's license upon being stopped, but could not do so. (Ex. A to Zuckerman Decl., Morales dep., p. 39, ll. 5-15)

<u>Plaintiff's Response to Defendants' Statement ¶12</u>

  Plaintiff denies that he was asked to produce his driver's license but admits that Officer

Morales was going to ask for it.

  When Officer Morales walked towards the driver's side, Mr. Morrison opened the car

door because the driver's side window did not open.  Officer Morales told plaintiff not to open

the door.  Plaintiff explained that the window did not open and that he did not have his wallet or

his driver's license with him. *See Response to Statement 9.*


<u>Defendants' Statement ¶13</u>

Plaintiff told P.O. Morales that he did not have his driver's license with him at the time of the stop. (Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 42, l. 25-p.43, l. 4)

Plaintiff's Response to Defendants' Statement ¶13

Admitted.

Officer Morales confirmed within minutes of the stop that Mr. Morrison was a licensed

driver by accessing NYSPIN (the New York Statewide Police Information Network). *Exh. 6:*

*Morales 15:2-23* (Noting that he had recorded in his memobook Mr. Morrison's Driver's License

number); *Id. 40:5-23* ("He did have a license."); *41:16-25* (Morrison had a valid Class

B/Commercial license which authorized him to drive trucks and passenger vehicles).


Defendants' Statement ¶14

Plaintiff was not licensed to be operating a taxi or limousine or vehicle for hire, the vehicle did
not have Taxi or Limousine Commission license plates and was registered as a passenger vehicle.
(Ex. A to Zuckerman Decl., Morales dep., p. 13, ll. 4-20; p. 31, l. 24-p. -32, l. 4; Ex. B to
Zuckerman Decl., Morrison 50-h transcript, p. 21 , l. 23-p. 22, l. 2)

Plaintiff's Response to Defendants' Statement ¶14

Plaintiff objects to these facts as immaterial but does not dispute them.  He was not

operating a vehicle for hire.


Defendants' Statement ¶15

The female passenger who had been sitting the back seat of the vehicle walked away upon
plaintiffs stop/arrest. (Ex. C to Zuckerman Decl., Morrison dep., p. 182, 11. 9-24)

Plaintiff's Response to Defendants' Statement ¶15

Denied.  Ms. Morris remained in the auto for a few minutes before asking defendant

Morris if she could leave.  She was told that she could.  She then walked approximately two

blocks on Eldert Lane to her destination. *See Response to Statement 9.*

-9-

Defendants' Statement ¶16

It was determined by P.O. Morales that plaintiff had an indication of an outstanding warrant from the NYSPIN system accessible in his NYPD vehicle at the scene of the stop. (Ex. A to Zuckerman Decl., Morales dep., p. 42, 11. 17-22; p. 43, 11. 4-12)

Plaintiff's Response to Defendants' Statement ¶16

Plaintiff admits that there was an "indication" of an outstanding warrant.

Defendants' Statement ¶17

Plaintiff was subsequently arrested at 3:05 a.m. on May 25, 2013, handcuffed and transported to the precinct stationhouse. (Ex. A to Zuckerman Decl., Morales dep., p. 11, 11. 23-25; p. 51 , 11. 8-14; Ex. D, Morris dep., p. 17, 11. 17-24; Ex. C to Zuckerman Decl., Morrison 50-h transcript, p. 43, 11. 10-13)

Plaintiff's Response to Defendants' Statement ¶17

Admitted to the extent that plaintiff was arrested at approximately 3:05 a.m. on May 25, 2013, handcuffed and transported to the precinct stationhouse.  Plaintiff objects to Statement 17 as an incomplete statement of facts relating to the subject matter of the Statement.  Plaintiff also objects to so much of Statement 17 as suggests or implies that Mr. Morrison was not under arrest before 3:05 a.m. and states that, once the Officers signaled plaintiff to stop, he was no longer free to go.

When Officer Morales returned from the police car the second time, he told plaintiff to exit the car.  Plaintiff was handcuffed and placed in the back of the police car. *Morrison Decl. at ¶16.*

-10-

Defendants' Statement ¶18

Plaintiff was told by P.O. Morales en route to the precinct stationhouse that he had been stopped for speeding. (Ex. C to Zuckerman Decl., Morrison dep., p. 45, I. 23-p.46, I. 3)

Plaintiff's Response to Defendants' Statement ¶18

Plaintiff objects to Statement 18 as an incomplete statement of facts but otherwise admits it.

While being driven to the Precinct, plaintiff asked Officer Morales why he had been pulled over. Officer Morales said that plaintiff had been speeding and came to a short stop. Plaintiff replied that that was not true. *Morrison Decl. at ¶17.*

Officer Morales then stated to plaintiff that Mr. Morrison had been operating an illegal cab. Plaintiff replied that Officer Morales was making assumptions and that plaintiff knew the passenger and was not driving a cab. *Id. at ¶18; see also Exh. 13: May 28, 2013 Statement of Windsor Morrison at p.1.*


Defendants' Statement ¶19

No physical force was used in the arrest, including no "punching, kicking, hitting, [or] slapping," nor was there contact of a "physical nature." (Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 44, 11. 9-14; p. 48, 11. 19-23; Ex. C to Zuckerman Decl., Morrison dep. p. 224, 11. 15-17)

Plaintiff's Response to Defendants' Statement ¶19

Plaintiff admits that he was not punched, kicked, hit or slapped during the car stop or while otherwise in the custody of Officers Morales and Morris. Plaintiff objects to the term "physical force" and "contact of a physical nature" as conclusory, ambiguous, and as calling for legal conclusions. Plaintiff does not assert that defendants used "unreasonable force" within the

meaning of the Fourth Amendment but is making State law claims of assault and battery

predicated on an unlawful arrest.

Plaintiff was handcuffed, searched at the Precinct Stationhouse and chained together with

approximately ten other prisoners before being transported to Central Booking. *Morrison Decl.*

*at ¶24.*


Defendants' Statement ¶20

Upon arriving at the precinct stationhouse, P.O. Morales accessed the NYPD's ADW system, and the indication of an open warrant from 2007 was confirmed by the ADW system. (Ex. A to Zuckerman Decl., Morales dep., p. 52, ll. 7-10; p. 53, ll. 9-13; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 52, ll. 3-7)

Plaintiff's Response to Defendants' Statement ¶20

Plaintiff admits that Officer Morales accessed the Automated Database for Warrant

system ("ADW") but denies that ADW confirmed the indication of an open warrant.

Plaintiff refers this Court to Plaintiff's Counter Statement Pursuant To Local Rule 56.1

*infra.*


Defendants' Statement ¶21

Plaintiff ultimately received summonses in connection with his not being licensed to operate a taxi, limousine or vehicle for hire, which also state that plaintiff was speeding and that plaintiff admitted during the stop that he did not have his driver's license on his person. (Ex. A to Zuckerman Decl., Morales dep., p. 13, l. 21-p. 14, l. 17; p. 63, ll. 20-23; Morales Decl., ,r,r 2-3 and Exh. E and F thereto)

Plaintiff's Response to Defendants' Statement ¶21

Plaintiff admits that Officer Morales issued two summonses alleging unlicensed vehicle for hire and that Officer Morales stated therein that the vehicle had been speeding and that Mr. Morrison told Officer Morales that he did not have his license with him.

Plaintiff denies so much of this Statement as suggests or implies that he was operating an unlicensed vehicle for hire or that he was speeding.

Defendants' Statement ¶22

After issuing the summonses, P.O. Morales went back on patrol and only learned from plaintiff's lawsuit that plaintiff had been injured the next day during a transport for which P.O. Morales had no responsibility or role. (Ex. A to Zuckerman Decl., Morales dep., p. 65, II. 8-25; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 25, 11. 10-12; Ex. C to Zuckerman Decl., Morrison dep., p. 189, 11. 5-14; p. 225, II. 2-7)

Plaintiff's Response to Defendants' Statement ¶22

Plaintiff cannot admit, deny or otherwise dispute the circumstances or timing of defendant Morales' learning of plaintiff's injury.

Plaintiff objects to so much of Statement 22 as states or implies that, as a matter of fact or law, Officer Morales had "no responsibility or role" in the events leading to plaintiff's injury during transport. The statement is a legal conclusion regarding causation and not a factual allegation. Further, Officer Morales, after printing out the Bench Warrant, took it over to the cell block so it would "go with the paperwork associated with Mr. Morrison so he could be transported to Brooklyn Central Booking." *Exh. 6: Morales 54:14-18; 67:16-20* (brought the Warrant over to the other officers). Additionally, Officer Morales knew that the documents and information he prepared and assembled would be submitted to the Court system. *Id. 9:11-22*

Defendants' Statement ¶23

Plaintiff alleges that he was injured "when New York City Police Officers attempted to transport plaintiff and approximately ten other inmates to Brooklyn Central Booking." (Amended Complaint, ¶23; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 59, ll. 2-5; Ex. C to Zuckerman Decl., Morrison dep., p. 194, ll. 15-20)

Plaintiff's Response to Defendants' Statement ¶23

Plaintiff admits that he was injured when New York City Police Officers attempted to transport plaintiff and other inmates from the 75th Precinct Stationhouse to Brooklyn Central Booking. *Morrison Dec. at ¶¶25-28; see generally Exh. 2: 50-h 58-64; Exh. 4: Excerpted Transcript of Plaintiff's May 20, 2016 Continued Deposition 193:15-198:2, 199:3-211:9* (describing being chained and entering the prisoner van).

Defendants' Statement ¶24

Plaintiff further alleges that he was handcuffed together with other inmates by officers other than P.O.'s Morales and Morris in a "daisy chain" for transport from the precinct stationhouse to Brooklyn Central Booking. (Amended Complaint, ¶23; Ex. B to Morrison 50-h transcript, p. 58, ll. 12-25; Ex. C to Zuckerman Decl., Morrison dep., p. 193, ll. 19-20)

Plaintiff's Response to Defendants' Statement ¶24

Plaintiff admits that officers other than Morales and Morris chained plaintiff together with about ten other inmates in a single, long chain. *Morrison Dec. at ¶24; Exh. 2: 50-h 58:2-59:10.*

Defendants' Statement ¶25

Plaintiff alleges that the officers who were to transport him the next day to Brooklyn Central Booking "neglected to bring with them the keys to unlock the rear entrance of the van ( or the doors were broken) that was to be used for transporting the prisoners ... and instead attempted to squeeze and force the prisoners through the front passenger doorway behind the front passenger

-14-

seat, which had been pushed forward." (Amended Complaint, 25-26; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 63, ll. 5-18; Ex. C to Zuckerman Decl., Morrison dep., p. 201 , ll. 7-12; p. 203, ll. 13-14)

<u>Plaintiff's Response to Defendants' Statement ¶25</u>

Plaintiff denies so much of Statement 25 as alleges that the transport to Central Booking was the "next day," and states that the initial attempt at transport occurred on May 25, 2013 at approximately 8:45 a.m.. *Exh. 14: Stationhouse Command Log for May 25, 2013 at Def 591.* Plaintiff admits that the transport officers either did not have with them the keys to unlock the rear entrance of the van that was to be used for transporting the prisoners or that the doors were broken. *Morrison Dec. at ¶25.* Plaintiff admits that, rather than get the keys or take the prisoner van out of service and use a properly operating vehicle, the transport offices attempted to board the adult, male prisoners through the front passenger doorway behind the front passenger seat, which had been pushed forward. *Morrison Dec. at ¶26.* The space between the rear of the seat and the entranceway is twelve inches. *Id. at ¶26; Exh. 10: Photos of Prisoner Van.*

<u>Defendants' Statement ¶26</u>

Plaintiff alleges that when the inmate to whom plaintiff was "directly handcuffed fell, Mr. Morrison fell along with him," causing injuries to his wrists. (Amended Complaint,27; Ex. B to Zuckerman Decl., Morrison 50-h transcript, p. 65, l. 23-p. 66, l. 2; p. 5 68, ll. 4-6; p. 68, ll. 15-17; p. 69, ll. 8-14; Ex. C to Zuckerman Decl., Morrison dep., p. 211, ll. 3-6)

<u>Plaintiff's Response to Defendants' Statement ¶26</u>

Plaintiff admits there was a spare tire with a metal rim bolted to the floor of the first compartment behind the passenger and driver's seat and that he was chained with his right hand to a prisoner whose foot became lodged inside hole of the rim causing him to go down, yanking

plaintiff violently down to the floor. *Morrison Dec. at ¶27.* Plaintiff further admits that he suffered injuries to his wrists necessitating surgeries on both of them. *Id.* at ¶31; *see also Exh. 11: July 21, 2015 Report of Dr. Joyce Goldenberg.*

## Plaintiff's Counter-Statement Pursuant to Local Rule 56.1

Plaintiff's Statement 1

Mr. Morrison was arrested on March 5, 2007 and charged with a Vehicle and Traffic Law violation. *See Exh. 3 at p. Def. 612 attached to the March 20, 2018 Declaration of Timothy Hardiman ("Hardiman Decl."): Criminal Record Information and Management System (CRIMS) regarding the March 5, 2007 arrest and resulting prosecution ("CRIMS Record"); Hardiman Decl. at ¶10.*

Plaintiff's Statement 2

The CRIMS Record indicates that a Bench Warrant was ordered on September 19, 2007. *See Hardiman Dec. at ¶10; Exh. 3 at p. Def. 613 attached to Hardiman Decl.* (PRWO: "Parole Revoked Warrant Ordered") and that Mr. Morrison returned to Court on April 16, 2008 and was released on his own recognizance. (*Id. at 613* - ROW: "Return on Warrant"; ROR: "Released on Own Recognizance"); *see also Exh. 7: Excerpt of June 2, 2016 Transcript of Eric Downes ("Downes") at 59:3-9; 60:13-24.*

Mr. Morrison returned to Court the next day, April 17, 2008, and the Court advanced the case from its May 28, 2008 calendar, Mr. Morrison pled guilty and sentence was imposed and the fine paid. *Hardiman Decl. at ¶10; Exh. 3 attached to the Hardiman Decl. at p. Def. 613 and 615*

*(*PGSI: Pled Guilty Sentence Imposed – indicating appearance on April 17, 2008 and payment of a fine); Morris Decl. at ¶23; Exh. 7: Downes at 60:19-23.*  The CRIMS records indicate that the prosecution was marked "finished" as of April 18, 2008.  *Exh. 3 to Hardiman Decl. at p. Def. 612.*

Officer Morales also confirmed, *Exh. 6: Morales 63:9-13*, that the CRIMS information regarding the docket associated with the Warrant, *Exhibit 3 attached to the Hardiman Decl.*, indicated a Return on Warrant on April 16, 2008, meaning that the person wanted under the September 2007 Warrant – Mr. Morrison - had returned to Court on April 16, 2008.

Plaintiff's Statement 3

The Certificate of Disposition, issued on April 17, 2008, *Exh. 4 attached to the Hardiman Decl.,* confirms the April 17, 2008 appearance, guilty plea and payment of the fine.

Plaintiff's Statement 4

On May 25, 2013, the vehicle Officers Morales and Morris were operating was equipped with a computer, called a Mobile Digital Terminal, from which information about driving records and warrants could be accessed.  *Exh. 5: Morris 13:24-14:9; 14:13-23; 15:10-17:2.*

Plaintiff's Statement 5

Officer Morales confirmed within minutes of the stop that Mr. Morrison was a licensed driver by accessing NYSPIN (the New York Statewide Police Information Network).  *Exh. 6: Morales 15:2-23* (Noting that he had recorded in his memobook Mr. Morrison's Driver's License

number); *Id. 40:5-23* ("He did have a license."); *Id. 41:16-25* (Morrison had a valid Class B/Commercial license which authorized him to drive trucks and passenger vehicles).

Plaintiff's Statement 6

      Officer Morales' computer search also indicated a possible warrant and he called a supervisor to the location. *Id. 42:2-43:12.*

Plaintiff's Statement 7

      Warrant checks are conducted as part of a car stop and, if a warrant is indicated, the person is brought to the Stationhouse for further investigation to confirm whether there is, in fact, an open warrant. *Exh. 5: Morris 22:19-23:24.*

Plaintiff's Statement 8

      Had there been no indication of a warrant, Officer Morales would have prepared summonses for unlicensed vehicle for hire and released Mr. Morrison. *Exh. 6: Morales 50:2-5.*

Plaintiff's Statement 9

      Once arriving at the 75th Precinct Stationhouse, Officer Morales queried the Automatic Database for Warrants, *Id. 52:7-10*, and printed the Bench Warrant. *Exh. 6 attached to Hardiman Decl.*

Plaintiff's Statement 10

Officer Morris knew from other officers that the ADW system was unreliable.  There was a "glitch" caused by different terminology used by the Police Department and the Court system regarding warrants. *Exh. 5: Morris 27:21-28:18; Hardiman Decl. at ¶7.*

Plaintiff's Statement 11

Officer Morales took the Bench Warrant over to the cell block so it would "go with the paperwork associated with Mr. Morrison so he could be transported to Brooklyn Central Booking." *Exh. 6: Morales 54:14-18; 67:16-20* (brought the Warrant over to the other officers).

Plaintiff's Statement 12

Officer Morales took no further steps to confirm that the Warrant was active, *Id. 54:19-25*, and stated that, as to confirming whether the Bench Warrant was valid, there was nothing else that he should have done. *Id. 66:7-11.*

Plaintiff's Statement 13

Officer Morales relied exclusively on the ADW in determining that there was an open warrant for Mr. Morrison's arrest. *Id. 52:7-10.*  New York City Police Officers, however, are not permitted to rely on ADW alone in determining the validity of a bench warrant.

<u>Plaintiff's Statement 14</u>

Officers are directed that an indication of a Criminal Court Bench Warrant in ADW ". . . is an indication of a POSSIBLE WARRANT and is <u>not</u> sufficient authority for arrest." The Patrol Guide further directs that "Where any doubt exists a verification should be made <u>directly</u> from the court records <u>or</u> if unable to determine the warrant status via C.R.I.M.S. [Criminal Record Information and Management System] at the precinct level <u>or</u> if there are any operational questions contact the Warrant Section, Telephone Inquiry Unit ... ." *Exh. 5 attached to Hardiman Decl.: New York City Police Department Patrol Guide Section 208-22, "Performing Local, State, and Federal Warrant Checks." (emphasis in original); Hardiman Decl. at ¶13; see generally Exh. 2 attached to Hardiman Decl.: August 8, 2016 Report of Timothy Hardiman at ¶¶12-14.*

<u>Plaintiff's Statement 15</u>

Patrol Guide Section 208-22 advises that a Warrant marked with a "C," as was Mr. Morrison's, indicates a misdemeanor Bench Warrant (*Exh. 5 attached to Hardiman Decl.: PG 208-22 at p.5; Hardiman Decl. ¶13)* and directed Officer Morales that an "ADW search ... reveal[ing] an OCA # designation preceded by the letter ... C ... is an indication of a POSSIBLE WARRANT and is <u>not</u> sufficient authority for arrest." (*emphasis in original*).

<u>Plaintiff's Statement 16</u>

The Patrol Guide, *Exh. 5 attached to Hardiman Decl. at ¶10 p.5,* directed Officer Morales that "IF OCA # DESIGNATION BEGINS WITH THE LETTER ...C ..., [he] MUST

conduct a further inquiry via Criminal Record Information and Management System (C.R.I.M.S.)

court computer application, which will provide 'the last status of the warrant.'" (*Emphasis in original*); see also *Id.* at ¶¶11-17 at p.6 (instructions for accessing CRIMS database).


Plaintiff's Statement 17

Finally, the "Additional Data" Section on page 7 of Patrol Guide 208-22 states: "Where

any doubt exists a verification should be made <u>directly</u> from the court records or if unable to

determine the warrant status via C.R.I.M.S. at the precinct level or if there are any operational

questions contact the Warrant Section, Telephone Inquiry Unit ... ."


Plaintiff's Statement 18

On May 25, 2013, there was no active Bench Warrant for plaintiff.


Plaintiff's Statement 19

Had Officer Morales checked the C.R.I.M.S. system as set out in the Patrol Guide, the

CRIMS Record, *Exh. 3 attached to Hardiman Decl.*, would have informed him that there was no

open warrant for Mr. Morrison's arrest.   *See Exh. 6: Morales 63:9-13.*

Plaintiff's Statement 20

Had Officer Morales determined at the Stationhouse that the Bench Warrant was not active, he would have released plaintiff from the Stationhouse with two summonses for unlicensed vehicle for hire. *Id. 50:2-5.*

Plaintiff's Statement 21

Mr. Morrison was arrested on or about September 16, 2010 by Police Officer O'Keefe Shield 24061 and charged with driving with a suspended license under New York County Criminal Court Docket No. 2010NY068925.  During that incident, he was not jailed based on the September 21, 2008 Bench Warrant.  *See Exh. 15 at pp. Def 631 and 627: CRIMS Records produced by defendant City regarding Criminal Court Docket No. 2010NY068925; Morrison Decl. at ¶23.*

Plaintiff's Statement 22

Mr. Morrison was arrested on or about January 30, 2011 by Police Officer Demario Shield 3456 and charged with driving with a suspended licensed under Kings County Criminal Court Docket No. 2011KN007745.  During that incident, he was not jailed on the September 21, 2008 Bench Warrant.  *See Exh. 15 at pp. 621, 623: CRIMS Records produced by defendant City regarding Criminal Court Docket No. 2011KN007745; Morrison Decl. at ¶23.*

Dated: March 27, 2018
New York, New York

Matthew Flamm

-22-