UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

WINDSOR MORRISON,

                        Plaintiff,                              DECLARATION OF
                                                           TIMOTHY HARDIMAN
       - against -                                14 CV 4508 (MKB)(VMS)

THE CITY OF NEW YORK, PETER MORALES and
EDMUND MORRIS, employees of the New York City
Police Department,

                        Defendants.
-----------------------------------------------------------------x

STATE OF NEW YORK )
                    : SS.:
COUNTY OF NASSAU  )

        TIMOTHY HARDIMAN declares the following under penalty of perjury pursuant to 28

U.S.C. §1746:

        1.      I am not a party to the above action and am over the age of eighteen (18) years.

        2.      I am the principal and owner of Viceroy Investigations & Consulting LLC and

have served as a police procedure expert for approximately five years.  I also am an instructor at

Southern Police Institute where I teach a sex crimes investigation course.

        3.      In addition to my consulting work though Viceroy, I work with the American

Military University where I am the Director of Law Enforcement Business Development.  A true

and accurate copy of my Curriculum Vitae is annexed hereto as Exhibit 1.

4.      Viceroy was retained by The Law Office of Matthew Flamm and Rubert & Gross, PC, the attorneys for the plaintiff herein, to review and render an opinion regarding the May 25, 2013 arrest and imprisonment of Mr. Morrison based on the authority of a September 2007 warrant for plaintiff's arrest, commonly called a Bench Warrant, which had been vacated on April 16, 2008.

5.      I prepared an August 8, 2016 report and summary of my findings, a copy of which is included here as Exhibit 2.  Redacted from that report are references to or opinions regarding the procedures used to attempt to transport plaintiff from the Stationhouse to Central Booking, as I understand that defendants do not take issue here with that aspect of this matter. The information reviewed and relied on appears as paragraph 5 of the Report.

6.      At the time of my August 8, 2016 Report, transcripts of the testimony of Police Officers Robert Morales, Edmund Morris, and William Rivera had not yet been received and I specifically noted that I did "not yet have transcripts … and may supplement or amend this report upon review of same."

7.      I have reviewed the transcripts of the August 1, 2016 depositions of Robert Morales, Edmund Morris, and William Rivera.  The testimony therein only reinforces and confirms the conclusions in my August 8, 2016 Report that the NYPD and Officer Morales failed to properly verify that Windsor Morrison was wanted on a valid Bench Warrant.  I note that Officer Edmund Morris testified at pages 27-28 of his transcript that he was aware of issues effecting the reliability of the NYPD's Automated Database for Warrant (ADW).

8.      Also attached hereto as Exhibits are several documents relied upon by me:
        Exh. 3: Criminal Records Information Management System
        (C.R.I.M.S.) Appearance History 2007KN026833 (Def 612-618)

–2–

Exh. 4: The Certificate of Disposition 2007KN026833 (Def 793)

Exh. 5: Patrol Guide 208-22

Exh. 6: Bench Warrant issued September 21, 2007 for Kings
County Docket Number 2007KN026833 (Def 237)

9.      The Report included herein as Exhibit 2, as redacted, is a true and accurate

account of my conclusions based upon the review of the materials available to me.

10.     The information in the Criminal Record Information and Management System

(CRIMS) records provided by defense (*Exh. 3*) indicates that Mr. Morrison was arrested on

March 5, 2007 (*Id. at Def. 612*) and charged with a Vehicle and Traffic Law violation.  A Bench

Warrant was ordered on September 19, 2007 (*Id. at Def 613* - PRWO: "Parole Revoked Warrant

Ordered") and Mr. Morrison returned to Court on April 16, 2008 and was released on his own

recognizance. (*Id. at 613* - ROW: "Return on Warrant"; ROR: "Released on Own

Recognizance").  Mr. Morrison returned to Court the next day, April 17, 2008, and the Court

advanced the case from its May 28, 2008 calendar, Mr. Morrison pled guilty and sentence was

imposed and the fine paid. *Id. at 613* – PGSI: "Pled Guilty Sentence Imposed;" *see also Id. at

Def. 615* – indicating appearance on April 17, 2008 and payment of a fine.  The CRIMS records

indicate that the prosecution was marked "finished" as of April 18, 2008.  *Id.* at Def 612.

11.     The Certificate of Disposition, issued on April 17, 2008 and attached hereto as

*Exhibit 4,* confirms the April 17, 2008 appearance, guilty plea and payment of the fine.

12.     Attached hereto as *Exhibit 5* is New York City Police Department Patrol Guide

provision 208-22 governing Warrant Checks in effect on May 25, 2013, the day of Mr.

Morrison's arrest.  Officer Morales testified that, during the car stop of plaintiff, he determined

through the New York Statewide Police Information Network (NYSPIN) database that there was

a possible warrant, and that, after bring Mr. Morrison to the Stationhouse, consulted only the

Department's Automated Database for Warrants (ADW), printed a Bench Warrant from a link in

ADW, and took no further steps to determine whether the September 21, 2007 Warrant was still

active.

13.     Patrol Guide Section 208-22 advises that a Warrant marked with a "C," as was

Mr. Morrison's, indicates a misdemeanor Bench Warrant (*Exhibit 5: PG 208-22 at p.5*) and

instructed Officer Morales that an "ADW search … reveal[ing] an OCA # designation preceded

by the letter … C … is an indication of a POSSIBLE WARRANT and is <u>not</u> sufficient authority

for arrest." (*emphasis in original*).  The Patrol Guide, *Id. at ¶10 p.5,* directed Officer Morales

that "IF OCA # DESIGNATION BEGINS WITH THE LETTER …C …, [he] MUST conduct a

further inquiry via Criminal Record Information and Management System (C.R.I.M.S.) court

computer application, which will provide 'the last status of the warrant.'" (*Emphasis in*

*original); see also Id.* at ¶¶11-17 at p.6 (instructions for accessing CRIMS database).  Finally, the

"Additional Data" Section on page 7 of Patrol Guide 208-22 states: "Where any doubt exists a

verification should be made <u>directly</u> from the court records or if unable to determine the warrant

status via C.R.I.M.S. at the precinct level or if there are any operational questions contact the

Warrant Section, Telephone Inquiry Unit ... ."

14.     The Bench Warrant relied on by Officer Morales, *Exh. 6*, indicates that it was

issued on September 21, 2007 and carried an Office of Court Administration (OCA) number of

C2007211222.

15.     The findings, opinions and conclusions contained in this Report are, to a

reasonable degree of professional certainty, true and accurate.

Dated: March 20, 2018

Timothy Hardiman

# EXHIBIT 1

# Timothy J. Hardiman

111 Roy Street
Massapequa, NY 11758
Phone: (516) 448-8164
tim@viceroyinvestigations.com

**Summary:** Retired police executive with progressively increasing responsibility and extensive experience in investigations, patrol, and training. A proven leader with excellent written and verbal communication skills.

## PROFESSIONAL EXPERIENCE:

**American Military University**                                                                                                      **2008-Present**
**Director, Business Development, Law Enforcement**
Responsible for American Military University's outreach efforts to law enforcement agencies nationwide. Identify, recruit, hire and train suitable personnel as Outreach Coordinators. Develop relationships with key law enforcement agencies and organizations. Develop print and internet advertising copy.
**Selected accomplishments:**
- Have significantly raised the profile, name recognition and reputation of AMU in the Law enforcement Community.
- New students identifying themselves as Law Enforcement" now account for 10% of enrollments.
- Expanding the law enforcement marketing efforts internationally with a significant outreach effort to Canada.
- Negotiated key partnerships with other companies and organizations.
- Developed and implemented a speaker program leading to over 30 appearances by faculty members in 2013.

**Viceroy Investigations & Consulting LLC**                                                                                 **2011 – Present**
**Owner**
Full service private investigation & consulting firm. Licensed by NY State Department of State.

**Southern Police Institute, Louisville, Kentucky**                                                                      **2013 – Present**
**Instructor, Sex Crimes Investigation Course**
Design and deliver three (3) days of instruction on conducting sexual assault investigations. Students include local law enforcement, prosecutors and military criminal investigators. Topics include: Sexual Assault Myths, Legal Aspects of a Sexual Assault Investigation, Ethical Aspects of a Sexual Assault Investigation, Rape Trauma Syndrome and Emotional First Aid, Physical Evidence, Interview & Interrogation, Pattern Identification & Investigation, Stress Management for Sexual Assault Investigators, New Technology in Sexual Assault Investigations,

**New York City Police Department, New York, NY**                                                                    **1986-2009**

**Inspector, Commanding Officer 47th Precinct**                                                                          **2006 –2008**
Commanding officer responsible for leading 300 sworn and civilian members of the NYPD. Promoted to current rank based on success in carrying out the Department's mission.
**Selected accomplishments:**
- Designated liaison and contact for several inter- and intradepartmental task forces and committees including *Precinct Community Council, Clergy Liaison, and Community Board 12*
- Successfully developed and implemented plan to reduce crime and violence using internal data to identify trends in violent crime and redesign work teams and flow to more effectively allocate resources
- Coordinate resources within and between city, federal, and state units and agencies to identify and target individuals responsible for violent crimes
- Successfully coordinate intra- and interagency resources to reduce overall crime rate. Interagency collaborations include but are not limited to: *NYPD, Federal Bureau of Investigation, Department of Consumer Affairs, Bronx District Attorney's Office*
- Incident commander at police incidents including shootings, homicides, and barricaded persons

- Designated liaison with elected officials, community leaders, tenant associations, and community groups to articulate command policy, respond to concerns, inform on current crime trends and conditions, and provide education regarding available police services

**Deputy Inspector, Commanding Officer, 50 Precinct**                                   **2004-2006**
Designated leader of 150 sworn and 30 civilian members of the NYPD.  Assigned by the Police Commissioner.
**Selected accomplishments:**
- Reduced crime rate consistently every year assigned
- Collaborated with two major universities within the command to address safety and security issues
- Cooperated with community groups to set enforcement priorities
- Acted as a consultant with area businesses to improve security and help solve criminal problems
- Assumed responsibility for policing Public Housing developments within the command (Formerly the responsibility of the Housing Bureau) resulting in a 30% reduction in index crime and anecdotal increased satisfaction with the police

**Captain, Commanding Officer, Leadership Development Section**                          **2002-2004**
Recruited by the Deputy Commissioner of Training to revamp leadership training in the NYPD
**Selected Accomplishments:**
- Provided significant leadership and consultation to the Deputy Commissioner of Training and the Commanding Officer of the Police Academy in all areas of Leadership Development
- Responsible for the *Uniform Promotion Training, Management Training*, and *Executive Development Units*
- Successfully trained 1,300 newly promoted Sergeants, Lieutenants, and Captains and provided in-service training for 3,000 employees in the above ranks
- Led the redesign and implementation of the *Basic, Advanced, and Command Leadership Courses* for newly promoted Sergeants, Lieutenants, and Captains
- Cooperated with unions in revising the training curriculums for their members
- Directed the design and implementation of new classes
- Identified and recruited experts from outside and within the department to provide training to the target audiences; worked with these experts to develop effective presentations
- Evaluated, hired, and managed outside vendor contracts responsible for providing training to select audiences
- Member of the training subcommittee formed in response to the *McKinsey Report: NYPD response to the September 11, 2001 terrorist attacks*

**Captain, Commanding Officer, Patrol Borough Queens South Task Force**                  **2000-2002**
Responsible for the recruitment, training, conduct, effective deployment and activity of the 100+ personnel assigned to this specialized unit.
**Selected Accomplishments:**
- Improved the morale and job satisfaction of officers assigned to the unit which led to increased overall productivity including enforcement activity (arrests and summonses), absenteeism, and sick leave
- Initiated systematic integrity and quality controls
- Redesigned the administrative functions of the unit. Used Microsoft Office to automate several monthly reports thereby reducing the size of administrative staff allowing the redeployment of two Police Officers to enforcement duties
- Effectively led the unit in numerous high-stress disorder control situations including:
  - *World Trade Center terrorist attacks, September 11, 2001*
  - *World Economic Forum protests, February 2002*
- Insured all staff members were properly trained and equipped to respond to disorder control and chemical, biological, or radiological (*COBRA*) incidents
- *"Shooting Team Leader"* responsible for leading investigation of cases where Police Officers discharged their weapons; including cases causing death

**Lieutenant, Commanding Officer Brooklyn Special Victims Squad**                        **1997-1999**
Selected by the Chief of Detectives to command two separate, high profile squads; Sex Crimes and Child Abuse.  Responsible for the investigation of all felony sex crimes and all cases of child abuse in Brooklyn.  Through personal leadership and motivation reinvigorated and improved morale of a formerly failing command.
**Selected Accomplishments:**
- Budget management and oversight for several divisions including: overtime, operations, investigations, court, and arrest

- Simultaneously managed high-profile and day-to-day activity and case loads
- Effectively managed multiple, fast changing priorities redeploying resources as appropriate
- Developed systematic plans for investigating serial rapists. This plan was eventually adopted citywide
- Presented case updates and investigative plans to the high command of the police department in writing and in person using multi-media presentations
- Effectively secured public's assistance with investigations through press conferences and media interviews
- Collaborated with the Bureau Chiefs of the Special Victims and Child Abuse Bureaus to repair what had been an adversarial relationship between the Special Victims Squad and the Kings County District Attorney's Office
- Participated in a multi-disciplinary team in the investigation of child abuse cases
- Built effective relationships with members of the different stakeholder agencies within the *Brooklyn Child Advocacy Center*
- Founding member of the *Brooklyn Sexual Assault Task Force*, an organization made up of the numerous public, private, and not-for-profit agencies that come in contact with sexual assault victims. The Task Force proposed and implemented administrative changes, advocated legislation, and offered training on sexual assault and child abuse issues

**Police Officer & Sergeant**                                                                                         **1986-1996**
Various patrol and investigative assignments gradually increasing in level of responsibility, exposure, and level of command

**United States Marine Corps, Cherry Point, North Carolina**                                          **1984-1986**
**Corporal, Nuclear, Biological and Chemical Warfare Specialist**, Marine Air Group (MAG) 14
Conducted training for Marines of MAG-14 in *Personal Protective Measures, Control Center, Personnel, and Equipment Decontamination*
**Selected Accomplishments:**
- Conducted exercises in all of the above areas
- Conducted *Mask Confidence* exercises (Gas Chamber)
- Participated in chemical warfare experiments at Naval Surface Warfare Center, Dahlgren, Virginia
- Honor Graduate, US Army Chemical School, Fort McClellan, Alabama


**ADDITIONAL EXPERIENCE:**


**Procter & Gamble, Cincinnati, Ohio**                                                                          **2000-Present**
**Security Consultant**
Conduct security audits of assigned sites; assist P&G personnel with integrity and security matters; provide training on security related matters to employees; maintain liaison with local law enforcement; conduct security assessments of P&G properties and work with P&G global security on other matters as needed.  Investigate incidents of counterfeit product sales and trademark infringement. Increased compliance with P&G Security guidelines to near 100%

**Part-time Faculty, American Public University System**                                               **2004-Present**
Teach Criminal Justice courses entirely on-line. Certified in the use of "Educator" software.  Courses taught include: Evidence and Procedure, Patrol Methodologies and Community Policing, Criminal Justice Administration, Stress Management in Law Enforcement, Corrections and Incarceration, U.S. Law Enforcement, Police & Society,

**Technical Consultant, Wolf Films**                                                                               **2005-Present**
Using the training and experience gained during my police career to collaborate with writers, producers, directors, and actors of leading police procedural weekly series. Provide episode ideas, check dialogue and procedures for authenticity, and coach actors on physical techniques of police work to ensure authenticity. Ensure realistic police procedures are followed during all stages of production. These tasks include checking uniforms for accuracy, making sure the characters employ appropriate tactics, that the chain of command is appropriate, dialogue is authentic and proper equipment is employed,


**EDUCATION:**
**Master of Public Administration**

Marist College, Poughkeepsie, New York

**Bachelor of Science**
University of the State of New York, Regents College, Albany, New York

**FBI National Academy**
Quantico, VA
Graduate of the 194th Session


**ADDITIONAL PROFESSIONAL EXPERIENCE:**
Executive Board Member, *NYPD Marine Corps Association*
Active Member, *FBI National Academy Associates*
Active Member, *International Association of Chiefs of Police*
Active Member, *NY State Association of Chiefs of Police*
Active Member, *International Association of Crime Analysts*
Active member, *National Law Enforcement Associates*
Active Member, *ASIS*
Instructor, *Project RESPECT*, Kings County District Attorney's Office
Instructor, *NYPD Criminal Investigation Course*
Instructor, *NYPD Sex Crimes and Child Abuse Course*
Presenter at sexual assault and child abuse investigations conferences

# EXHIBIT 2

Timothy J. Hardiman
111 Roy Street
North Massapequa, New York   11758


August 8, 2016


Matthew Flamm, Esq.
26 Court Street, Suite 2208
Brooklyn, New York 11242


Re: <u>Windsor Morrison v. The City of New York, Peter Morales, and Edmund Morris</u>
      United States District Court
      Eastern District of New York 14 CV 4508 (MKB)(VMS)

1.  Pursuant to Plaintiff's request, I have prepared this report, which constitutes my initial evaluation within a reasonable degree of professional certainty of the actions and procedures employed by defendants regarding the arrest and transportation of the Plaintiff in this case.  This evaluation is based on  review of the documents and photographs provided, my attendance at the June 17, 2016 inspection of a prisoner transport wagon, and my experience, training and education, and professional background, which are described below and listed in the attached resume.  I do not yet have transcripts of the depositions of Peter Morales, Edmund Morris, or William Rivera, and may supplement or amend this report upon review of same.

2.  I am a retired member of the New York City Police Department (NYPD), having served for more than (23) twenty-three years.  During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, Commanding Officer of the 71 Detective Squad, Commanding Officer of the Brooklyn Special Victims Squad, Executive Officer of the 101 Precinct, Queens; Commanding Officer, Queens South Task Force, Commanding Officer of the Leadership Development Section of the NYPD Police Academy, Commanding Officer of the 50 Precinct Bronx, and Commanding Officer of the 47 Precinct Bronx.

3.  During my tenure, I conducted or supervised the processing of numerous arrests which included persons arrested on Bench Warrants and the transportation prisoners.  I attended and instructed at numerous NYPD courses including the Basic Management Orientation Course, Advanced Leadership Course, and Command Leadership Course, Homicide Investigation Course and Kidnapping Investigation Course.  I attended and later instructed the Criminal Investigation Course and Sex Crimes and Child Abuse Course. I also attended numerous Executive Development classes.  As Commanding Officer of the Leadership Development Section of the NYPD Police Academy, I supervised the design and delivery of instructional material, including department policies and procedures to all newly promoted Sergeants, Lieutenants and Captains.

I also supervised the design and delivery of all in-service training to members of the NYPD in the ranks of Sergeant through Deputy Chief. I am a graduate of the 194th Session of the FBI National Academy in Quantico, VA.

4.  Since my retirement from NYPD, I have taught criminal justice courses at American Military University including courses in police administration, criminal investigation, stress management for law enforcement officers and the patrol function. American Military University is accredited by the Higher Learning Commission through its parent the American Public University System. I also designed and deliver the first three days of instruction of the Southern Police Institute, University of Louisville Sex Crimes Investigation Course. This class has been certified for in-service credit by the Kentucky Law Enforcement Commission. I have presented on various law enforcement topics at several law enforcement conferences.   I have been retained as a consultant by Plaintiffs and defendants in a number of security and police liability cases.


## MATERIALS REVIEWED

5.  The following is a list of materials pertaining to the incident and individuals involved that have been provided for my review thus far:

a.  <u>Windsor Morrison v. The City of New York, Peter Morales and Edmund Morris</u>: First Amended Complaint
b.  <u>Bowen v City</u> Complaint E.D.N.Y.  14 CV 6811 (LDH) (LMB)
c.  NYPD Patrol Guide Procedure 208-22
d.  NYPD Patrol Guide Procedure 202-39
e.  Criminal Records and Department of Motor Vehicle Record of Windsor Morrison (Def 764-765; 786-817)
f.  C.R.I.M.S. Records re Plaintiff (Def 593-632)
g.  Memo Books of Eric Downes, Peter Morales, Edmund Morris, Jose Alvarez, Carmello Rodriguez, William Rivera, Luis Cabrera
h.  Summons 4406387870 and 4406387882 (Morrison 27-31, Def 123-124)
i.  SPRINT Report (Def 1042)
j.  Bench Warrant issued September 21, 2007 for Kings County Docket Number 2007KN026833 (Def 237)
k.  C.R.I.M.S. Appearance History 2007KN026833 (Def 612-618)
l.  Certificate of Disposition 2007KN026833 (Def 793)
m.  Medical Treatment of Prisoner Form Plaintiff (Def 1041)
n.  NYPD Command Log Saturday May 25, 2013 (Def 238, 590-592)
o.  Prisoner Roster (Def 232-235)
p.  Photographs of Prisoner Transport Wagon
q.  Weather History May 25, 2013 New York, New York
r.  Windsor Morrison 50-h testimony
s.  Windsor Morrison Deposition Transcript
t.  Windsor Morrison typed statement regarding incident

u.  Deposition of Jose Alvarez
v.  Deposition of Eric Downes
w.  Deposition of Carmello Melendez
x.  Deposition of Luis Cabrera

## EVALUATION, OPINION AND BASIS FOR OPINION

6.  My evaluation of the above material regarding this matter and my background, education, and training leads me to form the opinion within a reasonable degree of professional certainty that the defendants violated the accepted and standard police practices and New York City Police Department procedures for arresting a person on a warrant and safely transporting prisoners in police custody.

7.  The Plaintiff testified that he was stopped by the police at about 2:35 AM on May 25, 2013.  According to the Plaintiff the police told him that he was stopped for unreasonable speed and being an unlicensed vehicle for hire.  The Plaintiff did not have his New York State Driver's License on his person at the time of the stop though he did possess a valid New York State Driver's License.  According to the Plaintiff, he produced a piece of US Mail with his name and address on it and gave the officers his date of birth.  The car he was driving was registered to his wife.  After a period of time the police handcuffed the Plaintiff and transported him to the 75th Precinct.

8.  While in the 75th Precinct holding cell, Plaintiff states Officer Morales told him he was under arrest because there was a warrant for his arrest.

9.  At about 8:30 AM, the Plaintiff along with approximately ten other male prisoners was handcuffed together to a prisoner transport chain.  He states that he and the other prisoners were led out of the 75th Precinct to a waiting prisoner wagon. Plaintiff states that the police officers assigned to escort him were unable to open the rear doors to the patrol wagon in order to load the prisoners. Plaintiff states that one officer stated that this was because the rear doors were broken and another stated that they needed a key which they did not have for the back doors. Plaintiff further states that the prisoners were then loaded through the passenger side front door and passed behind the passenger seat.

10.  Plaintiff states that there was a spare tire on the floor of the compartment immediately behind the driver and before entering the main holding area of the patrol wagon.  Plaintiff states that another prisoner who was also attached to the prisoner transport chain caught his foot on this tire, falling to the floor causing the Plaintiff to fall and causing injuries.  Other prisoners also were caused to fall.  It had been raining that morning and Department records indicate that the prisoner who fell was intoxicated.

11.  According to testimony, the rear doors of the patrol wagon were either inoperable or the escorting officers did not have a key to unlock them or were unable to locate a key to unlock them.

12. In my opinion, The NYPD failed to properly verify whether or not the Plaintiff was wanted on a valid Bench Warrant ██████████████████████████████████████ My opinion is based upon the following information:

13. The arresting officer, Police Officer Peter Morales, testified that the NYSPIN database he consulted while confirming Mr. Morrison's identity at the traffic stop indicated that there was an active Bench Warrant for Plaintiff's arrest, and that he radioed for a supervisor with whom he consulted. The supervisor directed Officer Morales to confirm the Warrant at the Stationhouse. At the Stationhouse, defendant Morales consulted the Department's Automated Database for Warrants (ADW) and printed a Bench Warrant from a link in ADW. He took no further steps to determine whether the Warrant had been vacated. He failed to check with the Criminal Record Management System (C.R.I.M.S.) nor did he contact the Borough Warrant Squad or Warrant Section to determine whether the warrant listed in ADW was active. This failure to confirm the Warrant listed in ADW was contrary to the New York City Police Department Patrol Guide Section 208-22. The "Note" on Page 5 of the procedure states that an indication of a Warrant in ADW ". . . *is an indication of a POSSIBLE WARRANT and is* not *sufficient authority for arrest.*" (emphasis in original). The "Additional Data" Section on Page 7 of 208-22 further states: "*Where any doubt exists a verification should be made* directly *from the court records* or *if unable to determine the warrant status via C.R.I.M.S. at the precinct level* or *if there are any operational questions contact the Warrant Section, Telephone Inquiry Unit ... .* " According to Officer Morales' testimony, he has not looked at his Patrol Guide in years and was unaware of the requirement to verify the warrant. This failure to verify the alleged warrant in violation of NYPD Patrol Guide Procedures led to the unnecessary detention of the Plaintiff and ██████████████████████ ████████████████████████████████████

14. On May 25, 2013, there was no warrant for Mr. Morrison's arrest. The underlying traffic infraction for which a warrant was issued was disposed of in April 2008 when Mr. Morrison appeared in Court to vacate the warrant, pled guilty to violation of V.T.L. §509.1 and paid a fine. Had Officer Morales checked the C.R.I.M.S. system as he was required to by the Patrol Guide, he would have known that there was no warrant for Mr. Morrison's arrest and, as Morales testified, he would have released Plaintiff from the Stationhouse with two summonses for unlicensed vehicle for hire had it not been for erroneous belief there was an outstanding warrant.

<u>CONCLUSION</u>

15.  It is my opinion, within a reasonable degree of professional certainty, the defendants in this case violated accepted and standard practices for confirming bench warrants were active and for safely transporting prisoners.

Timothy K. Hardiman

# EXHIBIT 3

```
AH01                         CRIMS APPEARANCE MENU              02/10/2015
COUNTY: KINGS                 APPEARANCE HISTORY                   RC26


      NAME:  MORRISON,WINDSOR              DOCKET:  2007KN026833
       CCN:              NYSID #:            ARREST #:  K07620937
       DOB:      ████1976            ARREST DATE:  03/05/2007
   IN CARE OF:
     STREET:  ████████████████        APT/FLR:  E6
       CITY:  ████████            STATE: NY    ZIP:  11210
      RACE:  B    SEX:  M                    FINISHED  04/18/2008

  NEXT APP DATE:          NEXT APP PART:          DKT DISP:  PGSI
  --------------------------------------------------------------------

                    OPTION DESIRED:  4

      1) ALL APPEARANCES              6) KEY APPEARANCES:
      2) FINAL DISPOSITION APPEARANCES         ARRAIGNMENT
      3) WARRANT/ROW APPEARANCES               DISPOSITION
      4) LAST 2 APPEARANCES & NEXT APP         SENTENCING
      5) APPELLATE COURT DISPOSITIONS          RE-SENTENCING

  COMMAND:      MESSAGE:
```



Δ π EXHIBIT 11
Deponent
Date 06/02/16 P    Rptr
WWW.DEPOBOOK.COM

DEF 612

```
AH02                    CRIMS APPEARANCE HISTORY              02/10/2015
COUNTY: KINGS              APPEARANCE DATES                     RC26

OPTION SELECTED: ALL APPEARANCES
NAME: MORRISON,WINDSOR                  DOCKET: 2007KN026833
 CCN:                NYSID #:           ARREST #: K07620937


 04/17/2008 (OPEN)  AP5      JDG:WILLIAMS,J   RPTR:DALPOS,  NT  PGSI
      $   PLED TO:VTL 509.1 ADV FRM:05/28/2008 FINE:$75 PAID  SURCH:
    $45 PAID $45  CVAF:$5 PAID

 04/16/2008 (OPEN)  AP5      JDG:WILLIAMS,J   RPTR:HAIRSTON,  ROW  NT
     C   ROR

 09/19/2007 (OPEN)  AP5      JDG:JEONG,A      RPTR:WILSON,  NT  PRWO,AP5

 06/19/2007 (OPEN)  AP5      JDG:WILLIAMS,J   RPTR:FORD,  NT  C
     PC



                                 PF7/PF8 TO VIEW MORE APPEARANCES

COMMAND:      MESSAGE:
```

DEF 613

```
AH02                      CRIMS APPEARANCE HISTORY            02/10/2015
COUNTY: KINGS                APPEARANCE DATES                     RC26


OPTION SELECTED: ALL APPEARANCES
NAME: MORRISON,WINDSOR                    DOCKET: 2007KN026833
 CCN:                    NYSID #:          ARREST #: K07620937


 04/11/2007 (OPEN)  DAT       JDG:MICHELS,S     RPTR:EBANKS,  ARR:DAT  C
         ROR




                                    PF7/PF8 TO VIEW MORE APPEARANCES

 COMMAND:      MESSAGE:
```

DEF 614

```
AH03                    CRIMS APPEARANCE HISTORY ROUTINE              02/10/2015
COUNTY:   KINGS              CHARGES / DISPOSITION                    RC26

OPTION SELECTED: ALL APPEARANCES
NAME:  MORRISON,WINDSOR                       DOCKET:  2007KN026833
   CCN:                    NYSID #:           ARREST NUM:  K07620937

A A A                          SS      W    CRIMINAL COURT           ADDED
R R T                          UE      /    DISPOSITION /            APPEAR
R G T SEQ LAW   CODE/SECTION   BC WT CNT D  SENTENCE                 DATE
```

| A R G | A R T | A T | SEQ | LAW | CODE/SECTION | SS UE BC | W WT | CNT | W / D | CRIMINAL COURT DISPOSITION / SENTENCE | ADDED APPEAR DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Y | Y | | 001 | VTL | 511.1A | 1A | UM | 001 | | C002 | |
| | Y | | 002 | VTL | 509.1 | 01 | I | 001 | | PG | 04/17/2008 |
| | | | | | | | | | | $75 | |

```
TOP CHARGE: 001
COMMAND:       MESSAGE:
```

DEF 615

# EXHIBIT 4

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

CERTIFICATE OF DISPOSITION
NUMBER: 214374

THE PEOPLE OF THE STATE OF NEW YORK
VS

MORRISON,WINDSOR
Defendant

_____/1976
Date of Birth

_____
Address

NYSID Number

BROOKLYN        NY    _____
City         State   Zip

03/05/2007
Date of Arrest/Issue

Docket Number: 2007KN026833

Summons No:

VTL 511.1A   Driving with suspended license
Arraignment Charges

Case Disposition Information:

| Date | A Court Action | Judge | Part |
|------|----------------|-------|------|
| 05/28/2008 | A PLED GUILTY VTL 509 | WILLIAMS, J. | AP5 |
| | SI $75 FINE + MANDATORY SURCHARGE | | |
| | Driving w/o license | | |
| 4/17/2008 | PAID IN FULL | | AP5 |

NO FEE CERTIFICATION

_ GOVERNMENT AGENCY        _ COUNSEL ASSIGNED

_ NO RECORD OF ATTORNEY READILY AVAILABLE. DEFENDANT STATES COUNSEL WAS ASSIGNED

SOURCE   _ ACCUSATORY INSTRUMENT  _ DOCKET BOOK/CRIMS  _ CRC3030[CRS963]

    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

CLOTHIER,A  Archie SCC
COURT OFFICIAL SIGNATURE AND SEAL

04/17/2008
DATE        FEB: NONE

(CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
        SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL.)

509.1 is a violation not a criminal act

EXHIBIT 10
Deponent
Date 06/02/16
WWW.DEPOBOOK.COM

DEF 783

# EXHIBIT 5



## PATROL GUIDE

| Section: Arrests | | Procedure No:   208-22 | |
|---|---|---|---|
| **PERFORMING LOCAL, STATE AND FEDERAL WARRANT CHECKS** | | | |
| DATE ISSUED:<br>10/15/10 | DATE EFFECTIVE:<br>10/22/10 | REVISION NUMBER:<br>10-06 | PAGE:<br>1 of 7 |

**PURPOSE**     To assess an individual's fugitive status.

**PROCEDURE**     Whenever it is necessary to conduct a warrant check through a Department Local Area Network (LAN) computer.

**MEMBER CONCERNED**

1. Conduct a local level warrant name check by accessing the application, Automated Database for Warrants (ADW), on any Department LAN computer as follows:
   a. Select the ADW icon
   b. Enter tax number when prompted
   c. Select "Name Search" under "Queries"
   d. Select "Exact Name" under "Search Type"
   e. Enter name of individual in box provided
   f. Select the proper "Sex" and "Race" from the application "drop down" boxes
   g. Enter the date of birth, formatted as mm/dd/yyyy
   h. Select "Tables to Search" and choose "Warrant," "I-Card" and "Recidivist"
   i. Depress the "OK" button.

2. Conduct further inquiry via ADW, if name check provides an exact pedigree match with New York State Identification (NYSID) number attached, as follows:
   a. Select "Queries"
   b. Select "NYSID Search"
   c. Enter the complete NYSID number in the prompt box
   d. Select "Tables to Search" and choose "Warrant," "I-Card" and "Recidivist"
   e. Depress the "OK" button.

**NOTE**     *If the ADW response displays the name of the subject or prisoner as entered, and is followed by pedigree information on the name, which includes "matching date of birth," NYSID number and/or docket number, if any, and an OCA # appears, this is an indication of a "POSSIBLE WARRANT" OR "HIT." This information is related to an open investigation or criminal history on a subject identified as a recidivist or target narcotic violator.*

3. Conduct a search of the state and federal warrant files, if necessary, as follows:
   a. Access the FINEST MESSAGE SWITCHING SYSTEM (MSWS) mode via Management Information System (MIS) (Password required).



## NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 2 of 7 |

| | | |
|---|---|---|
| *NOTE* | | *This function is performed by typing MIS and then pressing the ENTER key. The MIS log will then be displayed on the screen. Press CLEAR key. Type MSWS and press ENTER key. FINEST logo will then be displayed. Fill in TAX # and "authorized" PASSWORD. Press ENTER key. Main menu will then be displayed. Select the caption NYSPIN INFORMATION FUNCTIONS by typing "X" in the left margin on line with function of choice, then Press ENTER key. Sub-menu appears. Select WINQ (state and federal warrant inquiry) by typing "I" in left margin, on line with function of choice, then press ENTER key.* |
| **MEMBER CONCERNED (continued)** | b. | Enter the data required on the line titled "WINQ" formatted as follows: |
| | | (1) Name Field - Last name, First name (space), Middle initial |
| | | (2) DOB - date of birth <u>must be six (6) digits</u> |
| | | Example:    01    01    51 |
| | |                      Mo.    Day    Yr. |
| | | (3) Sex - Male = M; Female = F |
| | | (4) Race - W = White; B = Black, etc. |
| | c. | Obtain response to the WINQ request by pressing the PF 24 key to display message on the screen |
| *NOTE* | | *In the upper left portion of the screen, Messages: # Total: # will be displayed. The number in the message box represents the number of messages that can be accessed from WINQ. The Total: # includes messages from other sub-menu functions.* |
| | d. | Utilize PF 14 key to go to the next page of the message, if response is multi-page (i.e., page 1 of 10) |
| | | (1) All the pages of the message <u>must</u> be viewed. |
| | e. | Print messages by pressing the INDENT key to printout contents on the screen. |
| *NOTE* | | *PF keys may be different on LAN terminals.* |
| | | <u>IF OCA # DESIGNATION BEGINS WITH THE LETTER "Q":</u> |
| *NOTE* | | *OCA # designation that begins with the letter "Q" <u>are not warrants</u> and this designation does not permit a hold on the subject unless other charges are made. These "Q" designations require a notification to the originator as displayed on the screen.* |
| **MEMBER CONCERNED** | 4. | Notify originator concerned, as follows: |
| | a. | Q652000 series is a MISDEMEANOR RECIDIVIST. ORIGINATOR: Boro/ECAB (Complaint Room/ADA). |

## NEW • YORK • CITY • POLICE • DEPARTMENT

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 3 of 7 |

**NOTE**    *This notification is intended to identify career misdemeanants and secure their immediate arraignment. It is designed to vigorously prosecute misdemeanor defendants with a substantial record of previous arrests and convictions, coupled with a history of failure to appear in court. NO DESK APPEARANCE TICKET WILL BE ISSUED TO DEFENDANTS IDENTIFIED AS MISDEMEANOR RECIDIVISTS.*

**MEMBER**              b.    Q653000 series is a NYC FIREARM VIOLATOR.
**CONCERNED**                  ORIGINATOR: NITRO UNIT concerned.
**(continued)**              (1)    Notify Narcotics Division, Borough NITRO Unit concerned
                                    if firearms arrest has an additional felony narcotic arrest.

**NOTE**    *These notifications are necessary when any person is arrested and a firearm is involved (used or possessed).*

                        c.    Q654000 series is an ARMED CAREER CRIMINAL.
                              ORIGINATOR: OCCB/ATF JOINT FIREARMS TASK FORCE.
                            (1)    An automatic notification, via FINEST System, to the
                                   Organized Crime Control Bureau/Bureau of Alcohol,
                                   Tobacco and Firearms Joint Firearms Task Force is initiated
                                   in these cases.

**NOTE**    *Persons in custody, who are categorized with a "Q" letter designation, will not be eligible to receive a DESK APPEARANCE TICKET (see P.G. 208-27, "Desk Appearance Ticket - General Procedure").*

                       IF OCA # DESIGNATION BEGINS WITH THE LETTER "X":

**NOTE**    *OCA # designations that begin with the letter "X" are not warrants and this designation does not permit a hold on the subject unless other charges are made. These "X" designations require a notification to the Borough NITRO Unit concerned. This notification is intended to coordinate, develop, maintain and disseminate narcotics intelligence information. The NITRO Unit concerned will issue appropriate instructions.*

**MEMBER**       5.    Notify Borough NITRO Unit concerned (ie., Central, Bronx, Brooklyn
**CONCERNED**          North, Brooklyn South, Manhattan North, Manhattan South, Queens,
                      Staten Island, or the Organized Crime Control Bureau, Field Operations
                      Desk between 2400 - 0800 hours), if OCA # designations are preceded by
                      the letter "X."

**NOTE**    *Persons in custody who are categorized with an "X" letter designation will not be eligible to receive a Desk Appearance Ticket.*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 4 of 7 |

### IF OCA # DESIGNATION BEGINS WITH THE LETTER "I":

**NOTE**
*OCA # designations that begin with the letter "I" are not warrants and this designation does not permit a hold on the subject unless other charges are made. These "I" designations require a notification to the Criminal Intelligence Section which is made to insure that the detective/investigator originating the "I" investigation is notified when the subject under investigation is arrested. Arresting officer should make every effort to notify Detective Squad concerned immediately.*

**MEMBER CONCERNED**
6.  Notify Criminal Intelligence Section, if OCA # designations are preceded by the letter "I."

**MEMBER CONCERNED, CRIMINAL INTELLIGENCE SECTION**
7.  Confirm "HIT."
8.  Issue appropriate instructions as per *P.G. 208-23, "Computerized Investigation Card System."*

**NOTE**
### WARRANTS

*Warrants are issued ORIGINATING CASE AGENCY (OCA) SERIAL NUMBERS by the Warrant Section to identify the warrant as follows:*

**LETTER**    *Designates the TYPE OF WARRANT and COURT OF ISSUANCE Followed by YEAR.*

**YEAR**    *Designates the year issued.  Followed by NUMBER.*

**NUMBER**    *Indicates the BOROUGH DESIGNATION of the court and is followed by an additional/sequential number.*

*Borough Designation #*
*Manhattan - 1, Brooklyn - 2, Bronx - 3, Queens - 4, Richmond - 5*
*An example of an OCA # follows:*
*OCA # R9710001*
*R          ➜ Supreme Court/Bench Warrant*
*97         ➜ Year of Issuance*
*1          ➜ Manhattan*
*00001      ➜ The first Supreme Court/Bench Warrant issued in Manhattan during the year 1997.*

## NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 5 of 7 |

**NOTE**
**(continued)**

*The following is a list of the OCA # letter designations indicating WARRANT TYPE and COURT OF ISSUANCE:*

| LETTER | TYPE OF WARRANT | COURT | VERIFICATION |
|---|---|---|---|
| A | Summons | Criminal Court | C.R.I.M.S. |
| B | Summons/Unclassified MISD | Criminal Court | C.R.I.M.S |
| C | Bench Warrant/MISD. | Criminal Court | C.R.I.M.S. |
| D | Bench Warrant/FELONY | Criminal Court | C.R.I.M.S. |
| E | Arrest Warrant | Criminal Court | C.R.I.M.S. |
| F | Arrest Warrant | Supreme Court | C.R.I.M.S. |
| H | P.I.N.S. | Family Court | Family Court |
| J | Juvenile Delinquent | Family Court | Family Court |
| K | Bench Warrant/Violation | Criminal Court | C.R.I.M.S. |
| N | Abuse/Neglect | Family Court | Family Court |
| P | Violation Probation | Supreme Court | C.R.I.M.S. |
| R | Bench Warrant | Supreme Court | C.R.I.M.S. |
| S | Parole Violator | Dept. of Parole | WD/T.I.U. |
| T | Training School | Div. for Youth Fac. | Family Court |
| V | Bench/FEL vs Person | Criminal Court | C.R.I.M.S. |
| W | Support | Family Court | Family Court |
| Y | Material Witness | D.A. Office | WD/T.I.U. |
| Z | Fugitive Warrant | F.O.A. | WD/T.I.U. |
| Q | Recidivist | Not a warrant | Notify Unit Concerned |
| X | Narcotic Violator | Not a warrant | NITRO |
| I | Investigation | Not a warrant | Criminal Intelligence Section/Det. Squad Concerned |

*After conducting ADW search and the inquiry reveals an OCA # designation preceded by the letter A, B, C, D, F, H, J, K, N, P, R, S, T, V, W, Y, or Z, this is an indication of POSSIBLE WARRANT and is not sufficient authority for arrest.*

**MEMBER**
**CONCERNED**

9.   Conduct an OCA # inquiry by accessing the application ADW, on any Department LAN as follows:
    a.   Select the ADW icon and enter tax number at the sign in prompt
    b.   Reference "Queries" at the top of the screen
    c.   Select "OCA Number Search"
    d.   Enter the complete OCA number in the "Search for" box
    e.   Under "Tables to Search" select "Selected Tables" and "Warrant"
    f.   Depress the "OK" button

**NOTE**

*This search will provide the entire warrant data on the specific warrant OCA # as required.*

**IF OCA # DESIGNATION BEGINS WITH THE LETTER A, B, C, D, E, F, K, P, R, V, Y OR Z (CRIMINAL COURT OR SUPREME COURT WARRANTS):**

**MEMBER**
**CONCERNED**

10.   MUST conduct a further inquiry via Criminal Record Information and Management System (C.R.I.M.S.) court computer application, which will provide "the last status of the warrant."

## NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 6 of 7 |

**NOTE**     *Family Court* and *Parole Warrant* status *cannot* be verified utilizing the Criminal Record Information and Management System (C.R.I.M.S.) court computer application. If ADW search indicates letter designations H, J, N, T, or W, these are Family Court warrants and require verification from the Family Court concerned (i.e., Manhattan, Brooklyn, Bronx, Queens and/or Staten Island). *A docket number is needed.*

Telephone verifications are to be done during Family Court business hours, 0900 to 1700 hours, Monday through Friday.

"J" (Juvenile Warrants) can be verified by contacting Youth Records (Real Time Crime Center).

If ADW search indicates letter designation "S," this is a *Parole Warrant* and *must* be verified by the Warrant Section, Telephone Inquiry Unit or through the NYS Division of Parole.

## TO GAIN ACCESS TO C.R.I.M.S. FOR WARRANT VERIFICATIONS:

**NOTE**     *C.R.I.M.S. is controlled by the N.Y.S. Office of Court Administration. User access is granted by the state and members can apply for access via NYS Unified Court System CRIM Application Security Request For NON-UCS Personnel (Form UCS-SEC-1 CRIM) by contacting the NYS Office of Court Administration.*

**MEMBER**     11.   Go to Host-on-Demand.
**CONCERNED**          a.   Double-click on the OCA icon
                12.   Type in:
                      a.   User name
                      b.   Password

**NOTE**     *As you type in PASSWORD, it will not appear on screen.*

                13.   Press ENTER (OCA/CICS Application screen appears).
                14.   Choose:
                      a.   CRIM - (to search for cases in Criminal Court)
                      b.   CRMS - (to search for cases in Supreme Court)
                      c.   Press enter.
                15.   Enter the county you wish to search (must use county name, e.g., "Kings" for Brooklyn).
                      a.   Press enter.

**NOTE**     *The C.R.I.M.S. system can only be searched by county/borough. This program does not search citywide.*

                16.   Type in Docket #, or Arrest #, or NYSID #.
                17.   Press ENTER.

## NEW • YORK • CITY • POLICE • DEPARTMENT

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 208-22 | 10/22/10 | 10-06 | 7 of 7 |

**NOTE**

*IMPORTANT HELPFUL KEYS - ENTER key (advances page); PF 5 key (scrolls back); PF 4 key (retrieves APPLICATION ID screen used to access other boroughs); PF 3 key (retrieves IDENTIFIER screen).*

*The primary purpose of conducting this inquiry is to verify the status of warrants. In an effort to ensure that the information in C.R.I.M.S. is interpreted properly, a list of court dispositions that indicate a warrant has been ordered on the defendant's last court appearance has been compiled as follows:*

**CRIMINAL COURT**

| Abbreviation | Literal Meaning |
|---|---|
| W.O. | Warrant Ordered |
| B.F.W.O. | Bail Forfeited, Warrant Ordered |
| C.W.O. | Complaint and Arrest Warrant Ordered |
| P.R.W.O. | Parole Revoked, Warrant Ordered |

**SUPREME COURT**

| | |
|---|---|
| S.I.A.W.O. | Sentence Imposed in Absentia, Warrant Ordered |
| T.C.A.W.O. | Trial Conducted in Absentia, Warrant Ordered |
| T.F.G.I.A.W.O. | Tried and Found Guilty in Absentia, Warrant Ordered |

**ADDITIONAL DATA**

*If C.R.I.M.S. response to inquiry indicates "NO PUBLIC RECORD" or "PURGED CASE" on an "A" or "B" warrant (summons) or "C" warrant (misdemeanor), the warrant has been VACATED.*

*If same response on any other warrant, verify with the court of issuance. If a response indicates "NO RECORD FOUND," make inquiry with NYSID #, if available.*

*Additional C.R.I.M.S. instructions are provided in the C.R.I.M.S. Manual BM 633 (10-92) Court Computer Program for Warrant Verification.*

*Where any doubt exists, a verification should be made directly from the court records or if unable to determine warrant status via C.R.I.M.S. at the precinct level or if there are any operational questions, contact the Warrant Section, Telephone Inquiry Unit. Provide Telephone Inquiry Unit member concerned with: arresting officer's name, shield #, tax registry #, call back telephone number, name of subject, subject's date of birth, warrant OCA #, docket # (if available) and NYSID # (if any). THIS INQUIRY IS TO BE MADE ONLY AFTER A NAME CHECK VIA ADW IS PERFORMED AT A PRECINCT/COMMAND.*

*If Department Local Area Network (LAN) terminal is inoperative, request the patrol borough to conduct the checks. Should the borough terminal also be inoperative, an adjoining precinct/designated arrest facility will be requested to conduct these checks. If the entire LAN system is out of service for more than twenty (20) minutes, the Central Warrant Unit will be requested by telephone to process and supply the necessary checks.*

*If system functional problems are encountered, contact the Management Information Systems Division, Help Desk.*

**RELATED PROCEDURES**

*Computerized Investigation Card System (P.G. 208-23)*
*Desk Appearance Ticket - General Procedure (P.G. 208-27)*

# NEW • YORK • CITY • POLICE • DEPARTMENT

# EXHIBIT 6

# Bench Warrant

## CRIMINAL COURT OF THE CITY OF NEW YORK

Date of issuance of the warrant: 9/21/2007

Offense Charged:

Name of Defendant:

## MORRISON, WINDSOR

**VTL05110(00)M**

| Part: | Return Part: | County: | Docket No: | OCA No: |
|---|---|---|---|---|
| **AP5** | **AP5** | **KINGS** | **2007KN028833** | **C2007211222** |

### IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK:

TO ANY POLICE OFFICER WHOSE GEOGRAPHICAL AREA OF EMPLOYMENT EMBRACES EITHER THE PLACE WHERE THE OFFENSE CHARGED WAS ALLEGEDLY COMMITTED OR THE LOCALITY OF THE COURT BY WHICH THIS WARRANT IS ISSUED.

A CRIMINAL ACTION HAVING BEEN PREVIOUSLY COMMENCED AGAINST THE ABOVE-NAMED DEFENDANT AND NOT HAVING BEEN TERMINATED BY A FINAL DISPOSITION, AND THE COURT REQUIRING THE PERSONAL APPEARANCE OF THE DEFENDANT IN THE PENDING CRIMINAL ACTION FOR A PURPOSE OTHER THAN INITIAL ARRAIGNMENT IN THE ACTION HAVING ORDERED THE ISSUANCE OF A BENCH WARRANT

THE DEFENDANT HAVING BEEN CONVICTED OF

AND HAVING BEEN SENTENCED TO

NOW THEREFORE, YOU ARE DIRECTED TO TAKE INTO CUSTODY THE ABOVE-NAMED DEFENDANT WHO IS PARTICULARLY DESCRIBED BELOW AND FOLLOWING HE ARREST YOU MUST WITHOUT UNNECESSARY DELAY BRING THE DEFENDANT BEFORE THIS COURT.  THE DELEGATION OF THIS WARRANT IS AUTHORIZED AS PRESCRIBED IN CPL 530.70(3)(4)(5).

BY ORDER OF THE COURT

Justin A. Barry, Chief Clerk
Criminal Court, City of New York



### DEFENDANT INFORMATION

| DOB : | 1976 | Age: | Race: | U |
|---|---|---|---|---|
| Sex: | M | Ht: | Hair: | XXX |
| Weight: | | Eyes: | XXX | |

ADDRESS:

Opr Lic #                          SSN:

### ARREST INFORMATION

| A/O Name | THOMAS | Shield # | Precinct: | 0069 |
|---|---|---|---|---|
| Arrest ID | K07620937 | Date | 3/5/2007 | Command | 0069 |
| Dept/Agency | NYSID # | | Tax Reg # | |

CONFIDENTIAL

EXHIBIT

Deponent
Date 04/27/16 Rptr
WWW.DEPOBOOK.COM

DEF 237