UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

WINDSOR MORRISON,

                Plaintiff,                **MEMORANDUM & ORDER**
                                              14-CV-04508 (MKB)

        v.

THE CITY OF NEW YORK, PETER MORALES,
and EDMUND MORRIS,

                Defendants.
--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Windsor Morrison commenced the above-captioned action on July 28, 2014

against Defendants the City of New York and Police Officers Peter Morales and Edmund Morris.

(Compl., Docket Entry No. 1.)  Plaintiff filed an Amended Complaint on October 29, 2014,

alleging unreasonable searches and seizures under the Fourth and Fourteenth Amendments, false

arrest and imprisonment, assault, battery, malicious prosecution, failure to intervene, negligent

maintenance, use, and operation of a motor vehicle, and negligence.  (Am. Compl., Docket Entry

No. 12.)  Currently before the Court is Defendants' motion for partial summary judgment as to

Plaintiff's claims for (1) Fourth and Fourteenth Amendment unreasonable searches and seizures,

(2) false arrest and imprisonment, (3) assault, (4) battery, (5) malicious prosecution under the

U.S. Constitution and New York state law, and (6) failure to intervene.  (Defs. Mot. for Partial

Summ. J. ("Defs. Mot."), Docket Entry 76; Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."),

Docket Entry No. 80.)  Plaintiff opposes the motion.[1]  (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"),

Docket Entry No. 86.)

For the reasons discussed below, the Court grants in part and denies in part Defendants'

motion for partial summary judgment.

## I.  Background

On May 25, 2013, at approximately 2:55 AM, Plaintiff was driving a four-door 2002

Lincoln Town Car eastbound on Linden Boulevard in Brooklyn, New York.  (Defs. L. R. 56.1

Stmt. ("Defs. 56.1") ¶¶ 1, 2, Docket Entry No. 77; Pl. L. R. 56.1 Stmt. ("Pl. 56.1") 1, 2, Docket

Entry No. 82.)  Shontell Morris sat in the backseat of the Town Car.  (Defs. 56.1 ¶ 1; Pl. 56.1 2.)

Officers Morales and Morris were on patrol duty that morning — Officer Morales was driving

the NYPD vehicle in which the two were traveling, and Officer Morris was the "recorder," the

individual who, among other things, responds to radio calls and documents summonses that are

issued.  (Defs. 56.1 ¶¶ 2, 3; Pl. 56.1 2, 3.)

At approximately 2:58 AM, the Officers stopped Plaintiff at or about the intersection of

Linden Boulevard and Eldert Lane.  (Defs. 56.1 ¶¶ 6, 7; Pl. 56.1 5–6.)  Officer Morales

approached Plaintiff's car, and Plaintiff told him that he did not have his driver's license with

---

[1]  In opposition to Defendants' motion, Plaintiff "requests that the Court deem the Amended Complaint to include a claim for violation of [P]laintiff's fair trial rights."  (Pl. Opp'n 14 n.1.)  The Court denies Plaintiff's request as inappropriate.  *See Wilson v. City of New York*, 480 F. App'x 592, 594 (2d Cir. 2012) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." (internal quotation marks omitted)); *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim.  Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Espinoza v. N.Y.C. Dept. of Transp.*, 304 F. Supp. 3d 374, 384 (S.D.N.Y. 2018) ("It is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion because it fails to give defendants fair notice of the nature of the plaintiff's claim and thus undermines the purpose of Federal Rule of Civil Procedure 8(a)" (internal quotation marks and citations omitted)).

him. (Defs. 56.1 ¶ 13; Pl. 56.1 8, 9.) Officer Morales then consulted the New York Statewide Police Information Network ("NYSPIN") from the NYPD vehicle, which revealed that Plaintiff had a valid Class B/Commercial license, authorizing him to drive trucks and passenger vehicles. (Pl. 56.1 9.) NYSPIN also indicated that there was an outstanding warrant for Plaintiff's arrest. (Defs. 56.1 ¶ 16; Pl. 56.1 10.)

At approximately 3:05 AM, Offices Morales and Morris handcuffed Plaintiff and transported him to the 75th precinct police station in the back of the NYPD vehicle. (Defs. 56.1 ¶ 17; Pl. 56.1 10.) On the way to the stationhouse, Officer Morales told Plaintiff that he had been stopped for speeding. (Defs. 56.1 ¶ 18; Pl. 56.1 11.)

Upon arrival at the stationhouse, Officer Morales accessed the NYPD's Automated Database for Warrant ("ADW") system, and confirmed that there was an outstanding 2007 warrant for Plaintiff's arrest. (Def. 56.1 ¶ 20; Pl. 56.1 12.) Plaintiff then received two summonses, both charging him with operating an unlicensed vehicle for hire. (Defs. 56.1 ¶ 21; Pl. 56.1 13.) The summonses state that (1) Plaintiff was speeding before he was pulled over by the Officers; and (2) Plaintiff told the Officers that he did not have his license with him at the time of the stop. (Defs. 56.1 ¶ 21; Pl. 56.1 13.)

Plaintiff states that after he received the summonses, he was handcuffed to other arrestees in a long chain and transported to Brooklyn Central Booking. (Pl. 56.1 14; Dep. of Windsor Morrison 193:15–24, Docket Entry No. 81-3; Decl. of Windsor Morrison in Opp'n to Defs. Mot. ("Morrison Decl.") ¶ 25, Docket Entry No. 83.) He explains in his sworn statement that "[n]one of the officers involved in the transport could open the back doors" of the van used to transport the arrestees, and that "[o]ne officer said [the back doors were] broken and another said they needed a key" but did not have one. (Morrison Decl. ¶ 25.) Plaintiff further states that the

transporting officers "decided to have [the arrestees] enter" behind the passenger's seat, about a twelve-inch space, and that "[t]here was a spare tire with a mental rim bolted to the floor of the first compartment behind the passenger and driver's seats." (*Id.* ¶¶ 26, 27.) While entering the van in this manner, the foot of the arrestee to whom Plaintiff was handcuffed "became lodged inside the hole of the rim causing him to go down, yanking [Plaintiff] violently to the floor." (*Id.*) After Plaintiff's fall, he was transported to Brooklyn Hospital for treatment and subsequently underwent surgeries on both wrists as a result of his injuries. (*Id.* ¶¶ 28, 31.)

Plaintiff was released approximately twelve hours after his arrest. (Am. Compl. ¶ 28.) He appeared in New York City Criminal Court, Kings County, twice on the charge of operating a taxi or vehicle for hire without a proper license. (Morrison Decl. ¶ 21.) At Plaintiff's second appearance, the charges were dismissed and sealed. (*Id.*)

The parties dispute several details about the events that transpired on the morning of Plaintiff's arrest. First, the parties disagree as to whether Plaintiff was speeding before he was stopped by the Officers. (*Compare, e.g.*, Defs. 56.1 ¶ 4 *with* Pl. 56.1 3–4.) Defendants contend that Officers Morales and Morris "first noticed [P]laintiff's vehicle because it appeared to be traveling at an excessive rate of speed," and "paced" Plaintiff (by matching his speed) for approximately three minutes. (Defs. 56.1 ¶¶ 4, 5.) Defendants assert that Plaintiff was driving approximately fifty miles per hour in a thirty mile per hour zone. (*Id.* at ¶ 5.) Plaintiff contends that he did not exceed the speed limit and was "most certainly" not driving fifty miles per hour from the time that he picked up his passenger, Shontell Morris, to the time that he was stopped by the Officers. (Morrison Decl. ¶ 8.) In support of his position, Plaintiff submits the Declaration of Ms. Morris, who was riding in the backseat of Plaintiff's car at the time of the stop. (Decl. of Shontell Morris in Opp'n to Defs. Mot. ("Morris Decl."), Docket Entry No. 84.)

Ms. Morris recounts that Plaintiff was driving in a "totally normal and reasonable" manner, and that, while she does not know the "exact speed the car was traveling," she could say "without any doubt" that Plaintiff "was not driving his car anywhere near [fifty] mph." (*Id.* at ¶¶ 7–8.)

Plaintiff also contends that it would have been impossible for the Officers to "pace" him for three minutes. (*See* Pl. Opp'n 3, 6–7.) Plaintiff claims that he and the Officers first came into each other's view at the intersection of Linden Boulevard and Crescent Street, and that the Officers stopped him at the intersection of Linden Boulevard and Eldert Lane, a distance of about a quarter of a mile. (Pl. 56.1 4; *see also* Defs. 56.1 ¶ 7.) Plaintiff argues that it would have taken far less than three minutes for the Officers to "pace" Plaintiff at fifty miles per hour driving the quarter of a mile from Crescent Street to Eldert Lane. (*See* Pl. Opp'n 3, 6–7.)

The parties also disagree about the nature of the relationship between Plaintiff and Ms. Morris, the woman who sat in the backseat of the Town Car driven by Plaintiff on the morning of his arrest. (*Compare* Defs. 56.1 ¶¶ 9–10, 15 *with* Pl. 56.1 2.) Defendants contend that after the Officers stopped Plaintiff and approached his vehicle, Officer Morales "spoke with the female passenger who . . . told [Officer] Morales . . . that she did not know [P]laintiff and that he was operating a taxi." (Defs. 56.1 ¶¶ 9–10.) Defendants assert that Ms. Morris "walked away upon [P]laintiff's stop/arrest." (*Id.* at ¶ 15.) Plaintiff contends that on the morning of his arrest, he was driving Ms. Morris to meet her boyfriend, a friend of Plaintiff's. (Pl. 56.1 2.) The Declaration of Shontell Morris corroborates Plaintiff's version of events. (*See, e.g.*, Morris Decl. ¶ 4 ("On May 25, 2013, Mr. Morrison gave me a lift in his automobile to take me to Mr. Lewis, who was my boyfriend at the time. . . . Mr. Morrison is friends with Mr. Lewis and was giving me a lift as a favor to him."); *id.* ¶ 5 ("I had been in [Plaintiff's] car before, and I sat in the rear seat [on the morning of Plaintiff's arrest] because the front passenger door did not work and

could not open.").)  Plaintiff also disagrees with Defendants' assertion that Officer Morales

asked Ms. Morris any questions.  (Pl. 56.1 6–7.)  Instead, Plaintiff claims that Ms. Morris

initiated conversation with Officer Morris, asking him whether she could leave the scene.  (*Id.* at

7; *see also* Morris Decl. ¶ 9 ("Neither of the two officers that stopped the car spoke to me or

asked me if I knew [Plaintiff] or why I was in his car. . . . I asked the officer who was standing

by the passenger side of the car whether I could leave and he said that I could.").)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v.

Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226,

230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to

determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of

Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d

537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50

(1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury

could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a

scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is

to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the

nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*,

221 F.3d 394, 398 (2d Cir. 2000).

### b. Unreasonable seizure claim

Defendants argue that they are entitled to summary judgment on Plaintiff's Fourth and Fourteenth Amendment claim of unreasonable seizure because the Officers observed Plaintiff speeding, and therefore had "reasonable suspicion and/or probable cause for the traffic stop/arrest."[2] (Defs. Mem. 8.)

Plaintiff contends that he "did not drive over the speed limit of thirty (30) miles per hour and [he] most certainly was not driving at [fifty (50) miles per hour]," — an argument supported by the declaration of his passenger — and argues that it would have been impossible for the Officers to "pace" Plaintiff for three minutes at fifty miles per hour on the quarter mile stretch of road on which they were traveling. (Morrison Decl. ¶ 8; Morris Decl. ¶¶ 7–8; Pl. Opp'n 3, 6–7.)

The Fourth Amendment protects individuals against unreasonable searches and seizures. *United States v. Gomez*, 877 F.3d 76, 85–86 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of the Fourth Amendment." *Id.* at 86 (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)) (internal quotation marks and alterations omitted). Such detention, therefore, must satisfy the Fourth Amendment's reasonableness test, which "requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a

---

[2] Because, as discussed below, the Court finds that the Officers had probable cause to arrest Plaintiff and that Plaintiff's arrest and search incident to arrest was therefore lawful, the Court considers Plaintiff's Fourth and Fourteenth Amendment claim to be one based on the initial stop of Plaintiff's vehicle, rather than the subsequent arrest and search. *See Maryland v. King*, 569 U.S. 435, 449 (2013) ("It is beyond dispute that 'probable cause provides legal justification for arresting a person suspected of a crime[.]' . . . Also uncontested is the 'right on the part of the Government . . . to search the person of the accused when legally arrested.'" (first quoting *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975); and then quoting *Weeks v. United States*, 232 U.S. 383, 392 (1914))).

traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *Id.* (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009)); *see also Whren*, 517 U.S. at 810 (officers may stop a vehicle "where [they] have probable cause to believe that a traffic violation has occurred."); *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) ("When an officer observes a traffic offense — however minor — he has probable cause to stop the driver of the vehicle." (citation omitted)). It is "well settled in this Circuit" that "speeding constitutes a traffic violation under New York law," *United States v. Bayron David Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011), rendering it constitutionally permissible to stop an individual if the officer has probable cause or reasonable suspicion to believe that the individual is speeding.

Plaintiff's sworn statement that he was not speeding and that it would have been impossible for the Officers to "pace" him for three minutes at fifty miles per hour on a quarter mile stretch of road, and the sworn statement of Ms. Morris that Plaintiff was not driving at a speed of fifty miles an hour, create a disputed issue of material fact that cannot be resolved on a motion for summary judgment. *See Stancuna v. Iovene*, No. 08-CV-30, 2018 WL 1368904, at *5–6 (D. Conn. Mar. 15, 2018) (where the only relevant record evidence was "affidavits and deposition testimony of the parties" who disagreed as to whether plaintiff had committed various traffic infractions, "genuine disputes of material fact" precluded summary judgment); *Ikezi v. City of New York*, No. 14-CV-5905, 2017 WL 1233841, at *5–6 (E.D.N.Y. Mar. 31, 2017) (finding disputed issues as to whether the officers had reasonable suspicion based on plaintiff's commission of traffic violations where plaintiff denied that he committed any such violation); *cf. Evans v. Solomon*, 681 F. Supp. 2d 233, 244–45 (E.D.N.Y. 2010) (summary judgment as to reasonableness of stop warranted where plaintiff admitted, *inter alia*, that he shifted lanes "in such a way that his tires likely crossed a solid double line" and made a turn without using his

blinker).  The Court therefore denies Defendants' motion for summary judgment as to Plaintiff's

Fourth and Fourteenth Amendment claim for unreasonable seizure.

### c.  False arrest and imprisonment

Defendants argue that Plaintiff's false arrest and imprisonment claim fails as a matter of

law because the Officers had probable cause to arrest Plaintiff based on the indication in the

NYPD's database that there was an outstanding warrant for Plaintiff's arrest.[3]  (Defs. Mem. 5,

7.)

---

[3]  Defendants also argue that the Officers had probable cause to arrest Plaintiff based on:
(1) the Officers' contention that Plaintiff had committed a traffic violation by speeding; (2) the
fact that Plaintiff could not produce his driver's license after he was stopped by the Officers; and
(3) the Officers' belief that Plaintiff was driving a taxi or vehicle for hire without a proper
license on the morning of his arrest.

Because, as discussed above, there are disputed issues of fact as to whether Plaintiff was
speeding at the time that the Officers pulled him over, the Court cannot conclude that the
Officers had probable cause to arrest Plaintiff based on the alleged traffic violation.

The Court also cannot conclude that Plaintiff's failure to produce a driver's license
provides a basis for probable cause.  Under New York law, it is not a crime or traffic violation to
fail to produce a license upon demand.  *Baksh v. City of New York*, No. 15-CV-7065, 2018 WL
1701940, at *5 (E.D.N.Y. Mar. 31, 2018) ("Unlike some other states . . . New York does not
make failure to produce a license upon a demand an independent crime or violation.").  Instead,
such a failure is "presumptive evidence that [an individual] is not duly licensed," in violation of
N.Y. Vehicle and Traffic Law § 509(1).  N.Y. Veh. & Traf. Law § 507(2).  The Court agrees
with Plaintiff that, based on the information available to the Officers at the time of Plaintiff's
arrest — including the fact that Plaintiff was indeed a licensed driver, which the Officers
discovered through the NYSPIN system — the Officers did not have probable cause to arrest
Plaintiff on the basis that he was not carrying his driver's license on his person.  *See Rivera v.
Metakes*, 216 F.3d 1073, 2000 WL 777954, at *2 (2d Cir. June 15, 2000) ("a driver who fails or
refuses to produce a license may be arrested and charged with unlicensed operation of a vehicle,
at least to the extent that the driver fails to identify himself in a manner sufficient for an officer
to determine whether the driver is licensed.").

In addition, genuine disputed issues of material fact prevent the Court from concluding
that the Officers had probable cause to arrest Plaintiff based on his alleged operation of a taxi or
vehicle for hire without a proper license.  Plaintiff and Ms. Morris contend that they knew each
other, and that neither of the Officers spoke with Ms. Morris prior to Ms. Morris asking Officer
Morris if she could leave the scene; Defendants contend that Ms. Morris told the Officers that
she did not know Plaintiff and that he was operating a taxi, and that Ms. Morris walked away
from the scene without asking for permission to do so.  (*Compare* Pl. 56.1 2, 7–8 *and* Morris
Decl. ¶ 9 *with* Defs. 56.1 ¶¶ 9–10.)

Plaintiff agrees that "the existence of probable cause is a complete affirmative defense to unlawful arrest claims," but asserts that "a reasonable jury could find that no probable cause existed for stop of the auto," and therefore argues that Defendants' motion for summary judgment as to his claim for false arrest and imprisonment should be denied. (Pl. Opp'n 8–9.) Plaintiff does not attack the reliability of the NYSPIN system accessed by the Officers at the scene of his arrest but argues that "[t]here is no dispute that the September 21, 2007 Bench Warrant relied on by [D]efendants to hold [Plaintiff] in custody had been vacated" and that "[Officer] Morales deviated from proper police procedures" by failing to take "reasonable and required steps to confirm the unreliable information contained in the ADW system" accessed once the Officers arrived at the precinct stationhouse. (*Id.* at 15–19.)

In assessing Fourth Amendment claims of false arrest brought under 42 U.S.C. § 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law). To establish a section 1983 claim for false arrest under New York law, the plaintiff must adduce evidence that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Ackerson*, 702 F.3d at 19; *see also Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)).

"[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (alteration in original) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "A police officer has probable cause for an arrest when

he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). In addition, police officers have probable cause to arrest when they observe a person commit a crime in their presence. *See Ackerson*, 702 F.3d at 20; *United States v. Scopo*, 19 F.3d 777, 781–82 (2d Cir. 1994). The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). A "plaintiff is not entitled to damages under [section] 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Id.* at 154. The question is "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez*, 728 F.3d at 155 (quoting *Jaegly*, 439 F.3d at 153).

In general, probable cause to arrest exists "[w]hen an officer learns from a computer database, such as NYSPIN, that a person is the subject of an outstanding arrest warrant." *United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008) (citing *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999)). Even if the arrest warrant in question later turns out to be invalid, an officer may still have probable cause to arrest the target of the warrant provided "the arresting officers did

not know, and had no reason to know, that the warrant had been vacated" or was otherwise

invalid. *Santa*, 180 F.3d at 27; *see also Apostol v. City of New York*, No. 11-CV-3841, 2014 WL

1271201, at *4 ("NYSPIN provides reasonably trustworthy information" to support probable

cause for arrest); *United States v. Miller*, 382 F. Supp. 2d 350, 367–68 (N.D.N.Y. 2005)

("Numerous courts in this Circuit have adopted the proposition that probable cause to arrest

exists on the basis of a computer hit where there is no evidence that the information contained in

the computer was false or invalid.") (collecting cases).

When Officer Morales checked the NYSPIN database, it indicated, albeit inaccurately,

that Plaintiff was the subject of an outstanding arrest warrant. (Defs. 56.1 ¶ 16; Pl. 56.1 10, 21;

Defs. Response to Pls. 56.1 8, Docket No. 88.) Because there is no evidence in the record that

either Officer knew or had reason to know that the warrant was invalid, the Officers had

probable cause to arrest Plaintiff. *See Santa*, 180 F.3d at 27 (outstanding warrant provides

probable cause even when invalid if arresting officer did not know or have reason to know that

the warrant was invalid). The Court therefore grants Defendants' motion for summary judgment

as to Plaintiff's false arrest and imprisonment claim. *See Gonzalez v. City of New York*, No. 16-

CV-00254, 2016 WL 7188147, at *7 (S.D.N.Y. Dec. 2, 2016) (In *Santa*, 180 F.3d 20, the Second

Circuit found that "[t]he officers' conduct was objectively reasonable because there was no proof

the recordkeeping system was unreliable."); *Willis v. City of New York*, No. 12-CV-5259, 2015

WL 556884, at *6 (S.D.N.Y. Feb. 9, 2015) (where plaintiff has not challenged the reliability of

the system or presented evidence that the arresting officers acted unreasonably in utilizing it, the

existence of an invalid warrant defeated claim for false arrest).

### d.   Malicious prosecution

Defendants assert that they are entitled to summary judgment on Plaintiff's malicious

prosecution claims because the Officers had probable cause to arrest Plaintiff and "probable cause is a complete defense to an action for malicious prosecution." (Defs. Mem. 5 & n.2.) In support of this argument, Defendants rely on the same four bases for probable cause as they do in support of their argument for summary judgment as to Plaintiff's false arrest and imprisonment claim. (*Id.* at 5–10.)

Plaintiff argues that it should be for the jury to decide whether the Officers had probable cause to commence a prosecution against him for operating a vehicle for hire without a proper license — the only offense for which Plaintiff was ultimately charged — "[i]n light of Shontell Morris' statement that she knew [P]laintiff and he was simply doing her a favor by giving her a ride." (Pl. Opp'n 14.)

"In order to prevail on [a malicious prosecution] claim under both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citations and internal quotation marks omitted); *see also Torres v. Jones*, 26 N.Y.3d 742, 760 (2016) ("The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" (citations omitted)). Further, "[w]hen raising a malicious prosecution claim under Section 1983, a plaintiff must also show a 'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Mitchell*, 841 F.3d at 79 (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir.

2004)); *see also Coleman v. City of New York*, 688 F. App'x 56, 58 n.1 (2d Cir. 2017) ("The tort of malicious prosecution relates to deprivations of liberty pursuant to legal process — meaning either post-arraignment or as a result of [an] arrest pursuant to warrant.").

Because the lack of probable cause is an element of a malicious prosecution claim, "the existence of probable cause is . . . a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (first quoting *Stansbury*, 721 F.3d at 94–95; and then citing *Torres*, 26 N.Y.3d at 761). The existence of probable cause in a malicious prosecution suit is determined at the time the prosecution is commenced, *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004), and is marginally higher than the standard in false arrest cases in that it requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff [is] guilty," *Stansbury*, 721 F.3d at 95 (citation omitted). Further, to determine whether probable cause exists sufficient to defeat a malicious prosecution claim, a court must separately analyze each "charge[] claimed to have been maliciously prosecuted." *Morris v. Silvestre*, 604 F. App'x 22, 25 (2d. Cir. 2015) (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)); *see also D'Angelo v. Kirschner*, 288 F. App'x 724, 726–27 (2d Cir. 2008) ("a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges"); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (relevant question is "whether sufficient probable cause existed to charge [plaintiff] with each of the crimes").

There are disputed issues of material fact as to whether the Officers had probable cause to initiate a prosecution against Plaintiff for the unauthorized use of a vehicle for hire. As noted above, the parties dispute whether Plaintiff's passenger, Ms. Morris, knew Plaintiff, whether either of the Officers spoke with Ms. Morris and, if so, whether she told either Officer that

Plaintiff was operating a taxi, and whether Ms. Morris walked away without asking permission to do so.  (*Compare* Defs. 56.1 ¶¶ 9–10, 15 *with* Pl. 56.1 2, 7–8 *and* Morris Decl. ¶ 9.)  The Court therefore denies Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claims.

### e.  Failure to intervene

Defendants assert that if the Court finds that the Officers had probable cause to arrest Plaintiff, each of his constitutional claims cannot withstand summary judgment.  (Defs. Mem. 5–6 & n.1–2.)  Presumably because the existence of a constitutional claim is essential to a failure to intervene claim, Defendants further assert that Plaintiff's failure to intervene claim cannot survive a finding of probable cause.  (*See id.* at 5–6 n.2.)

Plaintiff argues that Defendants are not entitled to summary judgment on his failure to intervene claim because "[a] jury [could] conclude that Officer Morris . . . not only actively participated in the encounter . . . but [also] knew that [Plaintiff] was not speeding and that there was no basis for the initial car stop, arrest and prosecution for unlicensed vehicle for hire, and knew that [Officer] Morales was fabricating evidence regarding the basis for the stop, arrest, and prosecution."  (Pl. Opp'n 21.)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)).  An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it."  *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Terebesi*, 764 F.3d at 243–44.  However, "[a]n

underlying constitutional violation is an essential element of a failure to intercede claim under [section] 1983." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."); *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying [it]." (citation omitted)).

As discussed above, the existence of probable cause to arrest is not dispositive of all of Plaintiff's constitutional claims. The Court therefore denies Defendants' motion for summary judgment as to Plaintiff's claim for failure to intervene with regard to Plaintiff's Fourth and Fourteenth Amendment claim for unreasonable seizure and his claim for malicious prosecution under the U.S. Constitution.[4] *See Simcoe v. Gray*, 577 F. App'x 38, 40 (2d Cir. 2014) (holding that disputed issues of material fact on the underlying constitutional violation created disputed issues of material fact as to failure to intervene claim); *Richardson v. Providence*, No. 09-CV-4647, 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012) (denying summary judgment on failure to intervene claim where the only basis for dismissal was the failure to establish a constitutional violation and the court found a material issue of fact with respect to whether the plaintiff was unreasonably detained).

---

[4] Because "[a]n underlying constitutional violation is an essential element of a failure to intercede claim under [section] 1983," *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010), Plaintiff's failure to intervene claim does not survive as to his malicious prosecution claim under state law.

### f. Assault and battery

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for assault and battery because the Officers were executing a lawful arrest and were therefore entitled to commit any assault and battery reasonably necessary to effectuate the arrest. (Defs. Mem. 10–11.)

Plaintiff argues that Defendants are not entitled to summary judgment on his assault and battery claims because there are factual disputes as to whether the Officers had probable cause to arrest Plaintiff. (Pl. Opp'n 19–20.)

Under New York law, assault is "an intentional placing of another person in fear of imminent harmful or offensive contact" and a "battery [is] an intentional wrongful physical contact with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (App. Div. 1998)); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (citing *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979)); *Rucks v. City of New York*, 96 F. Supp. 3d 138, 152 (S.D.N.Y. 2015). If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery. *See Rucks*, 96 F. Supp. 3d at 153 ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the forced used would be deemed reasonable if applied during a lawful arrest. In fact, where an arrest is unlawful and without consent, the use of force in an arrest must give rise to a claim for assault and battery." (internal quotation marks omitted) (first quoting *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); and then citing *Johnson v. Suffolk Cty. Police Dep't*, 665 N.Y.S.2d 440, 441 (App. Div. 1997)); *Figueroa*, 825 F.3d at 105 n.13 ("A lawful arrest is not an assault or battery

under New York law, provided the force used is reasonable."); *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." (quoting *Sulkowska*, 129 F. Supp. 2d at 294)).

Because, as discussed above, the Court concludes that the Officers had probable cause to arrest Plaintiff, the arrest was lawful.[5] *See Serrano v. City of New York*, No. 16-CV-8105, 2018 WL 3392869, at *11 (S.D.N.Y. July 12, 2018) ("The law is clear that 'where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable.'" (quoting *Leibovitz v. City of New York*, No. 14-CV-3297, 2016 WL 3671232, at *8 (S.D.N.Y. Mar. 17, 2016))); *Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *27 (S.D.N.Y. Jan. 3, 2013) ("[W]here an arrest is supported by probable cause, an officer will not be liable under theories of assault and battery," so long as that force is reasonable. (quoting *Gomez v. City of New York*, No. 05-CV-2147, 2007 WL 5210469, at *11 (S.D.N.Y. May 28, 2007))). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's assault and battery claims.

### g. Causation as to Plaintiff's wrist injuries

Defendants argue that "the Court should find as a matter of law that neither [Officer] Morales nor [Officer] Morris proximately caused [P]laintiff's alleged wrist injuries when he allegedly fell during transport to Brooklyn Central Booking" because "[t]he acts of other officers

---

[5] Because "Plaintiff does not assert that [D]efendants used 'unreasonable force' within the meaning of the Fourth Amendment," (Pl. 56.1 11–12), the Court only considers Plaintiff's argument that the Officers lacked probable cause to arrest Plaintiff in determining whether his arrest was lawful.

during the transport . . . were [ ] a new and independent cause of the alleged wrist injuries."
(Defs. Mem. 16.)

Plaintiff argues that "[t]he question of superseding cause . . . is generally for the jury," and that the jury should decide "at what point [ ] a defendant whose act or omission has contributed to an injury [is] relieved of liability because, after the act or omission, a new and independent cause comes into operation." (Pl. Opp'n 24, 25.)

"[I]n all [section] 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Bernshtein v. City of New York*, 496 F. App'x 140, 143 (2d Cir. 2012) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998)); *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) ("[A]n action to vindicate a constitutional right . . . employs the tort principle of proximate causation."); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 396 (S.D.N.Y. 2016) ("A [section] 1983 action, like its state tort analogs, employs the principle of proximate causation." (quoting *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999))); *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.NY. 2011) ("Actions brought under §1983 are similar to tort actions since they both serve to compensate victims, and a § 1983 action, like its state tort analogues, employs the principle of proximate causation." (internal alterations, quotation marks, and citation omitted)). Applying these principles, the Second Circuit has held that "a person whose initial act is the 'but for' cause of some ultimate harm (i.e., the harm would not have happened but for the initial act) is not legally liable for the harm if an intervening act is a 'superseding cause' that breaks the legal chain of proximate cause." *Higazy*, 505 F.3d at 181 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 351 n.7 (2d Cir. 2000)); *see also Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("Central to the notion of proximate cause is the idea that a person is . . . liable . . . only to those with respect to whom his acts were a

substantial factor in the sequence of responsible causation and whose injury was reasonably foreseeably or anticipated as a natural consequence." (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003))). An "intervening exercise of independent judgment" is an intervening cause that "usually breaks the chain of causation unless the plaintiff can provide evidence that the [independent actor] was misled or pressured by [the defendant]." *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) (citation and internal quotation marks omitted). However, an actor remains liable for the consequences of her actions caused by "reasonably foreseeable intervening forces." *Zahrey*, 221 F.3d at 351 (citation omitted); *see also Martin*, 793 F. Supp. 2d at 587–89 (describing foreseeability in the section 1983 context).

In addition, "[t]he issue of proximate cause is generally a question of fact for the fact finder, unless only one conclusion may be drawn from the established facts." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 211 (E.D.N.Y. 2004); *see also Martin*, 793 F. Supp. 2d at 586 ("In cases where there are independent intervening acts which operate upon but do not flow from the original [wrong], issues of proximate cause may be decided on a summary judgment motion." (citation and internal quotation marks omitted)); *id.* at 587 (granting summary judgment, reasoning that judge's decision to remand plaintiff to jail broke causal chain from defendant's unconstitutional acts to defendant's injuries while in jail).

Construing the facts in the light most favorable to Plaintiff, Plaintiff's wrist was injured when he was transported to Brooklyn Central Booking by officers other than Morales and Morris. (Pl. 56.1 14–15.) The transporting officers "either did not have with them the keys to unlock the rear entrance of the van that was to be used for transporting . . . or [ ] the doors were broken." (*Id.* at 15.) The transporting officers therefore "attempted to squeeze and force" Plaintiff and the other arrestees through the front passenger doorway behind the front passenger

seat, and Plaintiff fell and was injured as a result. (Am. Compl. ¶ 26; Pl. 56.1 15–16.) Neither the actions of Officer Morales nor the actions of Officer Morris were the proximate cause of Plaintiff's alleged wrist injuries. Although the Officers' allegedly unconstitutional actions were a "but for" cause of Plaintiff's wrist injuries, the Court finds that the transporting officers' failure to open the rear of the police van in which Plaintiff was transported — either because they failed to bring the key or because the rear door was broken — served as an intervening and superseding cause of such injuries, which broke the chain of causation for purposes of section 1983. *See Higazy*, 505 F.3d at 178 (remanding to district court to determine whether "there were superseding causes" that intervened between the defendant's coercion of the plaintiff's testimony and the plaintiff's subsequent detention, "cutting off [the defendant's] liability"); *Martin*, 793 F. Supp. 2d at 587 (granting summary judgment because while the defendant officer's "arrest of [the plaintiff] was certainly a link in the chain of events resulting in [the plaintiff's injuries], . . . this metaphysical relationship is insufficient to impose liability").

Because "constitutional tort liability under § 1983 is limited to the kind of injury that the constitutional right at issue was designed to prevent," *Townes*, 176 F.3d at 148 (alterations, internal quotation marks, and citation omitted), the Court finds, as a matter of law, that Plaintiff cannot recover damages for his wrist injuries based on his unreasonable seizure, malicious prosecution, and failure to intervene claims. *See id.* at 147 (Plaintiff is "foreclosed from recovery" because "the injury he pleads [*i.e.*,] a violation of his Fourth Amendment right to be free from unreasonable searches and seizures[,] does not fit the damages he seeks [*i.e.*,] compensation for his conviction and incarceration."); *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016) (explaining that damages in section 1983 cases "must be considered with reference to the nature of the interests protected by the particular constitutional right in question" (quoting

*Carey v. Piphus*, 435 U.S. 247, 265 (1978))).

However, to the extent that Plaintiff alleges injuries proximately caused by Defendants' unlawful conduct, his unreasonable seizure, malicious prosecution, and failure to intervene claims survive Defendants' motion. *See Townes*, 176 F.3d at 148 ("[V]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy — including (where appropriate) damages for physical injury, property damage, injury to reputation, etc."); *Blue v. City of New York*, No. 16-CV-9990, 2018 WL 2561023, at *6 (S.D.N.Y. June 4, 2018) (section 1983 compensates malicious prosecution victims for deprivation of liberty); *Terebesi*, 764 F.3d at 243 (damages for failure to intervene compensate section 1983 plaintiff for the "preventable harm" caused by those other than the defendant).

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment. The Court grants Defendants' motion for summary judgment and dismisses Plaintiff's claims for false arrest and imprisonment, assault, and battery. The Court denies Defendants' motion for summary judgment as to Plaintiff's unreasonable search and seizure, malicious prosecution, and failure to intervene claims.

Dated: January 10, 2019
      Brooklyn, New York

SO ORDERED:

    s/ MKB      
MARGO K. BRODIE
United States District Judge
